JOURNAL ENTRY and OPINION
This is an appeal from an order of Probate Judge John E. Corrigan that partially overruled a recommendation of Magistrate John A. Polito, and retained Charles Neuger as guardian of both the person and the estate of Jerry Weingart. Weingart claims it was error to overrule that part of the magistrate's decision that recommended Neuger be removed as guardian of his person, and additional error to accept the recommendation that Neuger be retained as guardian of the estate. We affirm.
In November 1999 Jewish Family Services became aware that Weingart, then seventy-six years old, was having difficulty caring for himself at his home in Shaker Heights. In early December he was diagnosed with symptoms of Alzheimer's disease and, sometime during that same month, he was transported to University Hospitals following a 911 call from his home through which he complained that he did not know where he was. His physician would not return him to his home and his case was reported to the Cuyahoga County Probate Court to institute guardianship proceedings. The case was referred to attorney Charles Neuger, who filed an application under R.C. 2111.02 to declare Weingart incompetent and to appoint himself as guardian, and a hearing was scheduled for February 2, 2000.
Although the court's docket contains no record that Weingart was given notice of the hearing, there is an endorsement from a probate court investigator that notice was delivered to Weingart on January 26, 2000, the last date available for adequate notice prior to the February 2, 2000 hearing date.[1] Magistrate Heidi Koenig issued a decision finding that Weingart had been duly notified of the hearing and his associated rights,[2] that he was incompetent and in need of a guardian, that Neuger was a suitable applicant, and named Neuger guardian of Weingart's person and estate. No attorney or guardian ad litem[3] was appointed to represent Weingart's interests in the proceeding, and it does not appear that Weingart was transported to the court (or even given the opportunity for transport) to participate in the hearing himself. The decision indicates that Neuger was the only person who appeared at the hearing, that Sally Breen of Jewish Family Services was the only other person notified of the decision, and no record of the hearing was requested or made.[4] Although the docket indicates that a journal entry was filed appointing the guardian and that letters of guardianship were issued, these documents are not in the record.
Although the referral from Jewish Family Services indicated that Weingart had substantial assets, Neuger initially filed a bond of $40,000 which was raised after he filed an inventory and appraisal listing Weingart's assets at approximately $1.4 million.
In February 2000 Weingart was transferred from University Hospitals to Alterra Assisted Living Center in Bainbridge and, despite his desire to return to his condominium in Shaker Heights, Neuger determined that his progressively deteriorating condition would prevent him from ever returning home and that Alterra was the better placement. In March or April 2000 William Cook, Weingart's stepbrother, happened to meet Neuger outside Weingart's unoccupied condominium, and learned of the guardianship and his placement at Alterra. After visiting him at Alterra, Cook apparently notified Weingart's niece and nephew, Andrea Lane and Kenneth Weingart, both of whom live outside Ohio, of his changed circumstances.
Neuger took steps to dispose of his ward's personal property and sell the condominium. In July 2000 Neuger received probate court permission to sell Weingart's car appraised at $8,000, to Lawrence Gaia, Weingart's stockbroker, for $4,000, apparently because he was to have received the car under Weingart's will. He also received court permission to make a gift of books to Columbia University, again based upon the terms of Weingart's will, to make gifts of some household furnishings to Gaia and others, and to give the remainder of the household goods to charity.
Neuger had Weingart's baby grand piano moved to Alterra after receiving advice from its staff that it might improve his spirits, and paid between $3,400 and $3,800 per month for the space occupied by the piano because it was kept in a separate patient/residential room.
Cook, Lane, and Kenneth Weingart sought to remove Neuger as guardian and appoint Cook, on the basis that the judge had appointed Neuger without knowledge that Cook, an Ohio resident, was willing and able to so act, and that Weingart was unhappy in Alterra and could be cared for reasonably in his own home.
Donald Price filed a similar motion on Weingart's behalf, alleging that, as he was a longtime friend, Weingart had asked him to be his lawyer. Price's motion alleged a host of improprieties: that Neuger refused to consider that Weingart could be cared for in his home because such arrangements would require more work for him as guardian; that Neuger had acted in a hostile or uncivil manner toward Price and Cook; that he had written an inappropriate letter telling Weingart that his only friends were his cousin, Carlita Karlin, who had first referred him to Jewish Family Services because of concerns about his welfare, and Lawrence Gaia; and that Neuger had inappropriately conducted Weingart's financial affairs by selling his car for half its appraised value, giving away his home furnishings, and moving the piano to Alterra. Price requested that Neuger be removed and that he or Cook be appointed guardian. Neuger opposed both motions and moved for a restraining order to prevent Price from visiting Weingart, claiming, inter alia, that Price, by promising him that he could return home, had agitated the ward and exacerbated his behavioral difficulties with Alterra staff.
At the hearing on the motions, the magistrate conducted a voir dire examination of Weingart, and took testimony of two physicians, Alterra employees, Cook, and Neuger. Both physicians testified that because of his cognitive difficulties Weingart required twenty-four hour supervision to ensure his safety and, because his condition is progressive, he eventually might require twenty-four hour care for basic functions such as eating, bathing, and dressing which, at that point, he was still able to do on his own. They both agreed, however, that at the time of the hearing, it would be possible to provide him with home care rather than requiring he stay at Alterra.
All witnesses testified that Weingart wanted to go home, although the Alterra employees testified that this was an expected response from any resident. The testimony also revealed Neuger's adversarial relations with Cook and Price over Weingart's living arrangements, his attempt to restrain Price from visiting him because of a belief that Price encouraged Weingart to reject Neuger as his guardian, and his letter to Weingart that told him his only friends were Lawrence Gaia and Carlita Karlin. Finally, the testimony revealed that, because the piano disturbed him, Weingart refused to play it.
The magistrate's report found that Weingart was acutely upset about his placement in Alterra, and that he should be allowed to live at home because he was financially capable of hiring in-home health care, recommended that Neuger be removed as Weingart's personal guardian, and that Cook or some other appropriate person be allowed to apply for consideration as guardian of the person. He also found, however, that there was insufficient evidence to remove Neuger as guardian of the estate and recommended he be retained in that capacity.
Price and Cook (along with Kenneth Weingart and Andrea Lane) filed joint objections to the recommendation, stating there was sufficient evidence to justify Neuger's removal as guardian of the estate, and that Weingart's interests would not be served by having separate, hostile guardians, because, inter alia, the guardian of the person would need cooperation from the guardian of the estate to make the financial arrangements necessary for Weingart's home care.
During the hearing on the objections the judge heard arguments from counsel as well as further submissions of evidence. He questioned Cook's relationship with Weingart because he was not listed in Jewish Family Services' initial report, but stated that he would have initially considered Cook as guardian had he been aware of him. The judge then expressed his confidence in Neuger, as follows:
 Mr. Neugar [sic] is a long time distinguished lawyer in the community and has worked in the probate court for many years, even [b]efore I came and took over the whole court so, you know, I would not think that he would do his job improperly. I would be amazed and shocked if that were the case.
The judge overruled the objections, and through a separate judgment adopted the magistrate's decision in part and rejected it in part, and ordered that the motions to remove be denied in their entirety, that Neuger be retained as guardian of both Weingart's person and estate, and Weingart's piano be removed from Alterra.
Price, on behalf of Weingart, claims as his first assignment of error:
 I. THE TRIAL COURT COMMITTED ERROR BY ABUSING ITS DISCRETION IN FAILING TO PROVIDE ANY REASON FOR REVERSING THE MAGISTRATE'S RECOMMENDATION TO REMOVE CHARLES NEUGER AS GUARDIAN OF THE PERSON; IN FAVORING MR. NEUGER BEFORE EXAMINING THE COURT RECORD AND IN IGNORING THE MORE RECENT PROVISIONS OF CIVIL RULE 53(E) APPLICABLE TO THE COURT'S AUTHORITY ABSENT ANY OBJECTIONS TO THE MAGISTRATE'S REPORT WHICH RECOMMENDED THE REMOVAL OF NEUGER AS GUARDIAN OF THE PERSON.
The first and third contentions are related because they challenge the judge's decision to overrule the magistrate's decision that Neuger be removed as guardian of the person. We address the third contention first because it challenge's the judge's authority to make the decision, while the first attacks only the form of the decision.
Weingart claims that the judge has no authority to review questions not specifically raised by the parties' objections, or to modify a magistrate's decision in a way not requested through a party's objection. Civ.R. 53(E)(4) provides:
(4) Court's Action on magistrate's decision
 (a) When effective. The magistrate's decision shall be effective when adopted by the court. The court may adopt the magistrate's decision if no written objections are filed unless it determines that there is an error of law or other defect on the face of the magistrate's decision.
 (b) Disposition of Objections. The court shall rule on any objections. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.
* * *
Even when no objections are filed, a judge has a duty to review a magistrate's decision before adopting it, although Civ.R. 53(E)(4)(a) no longer mandates an "independent" review, but only requires the judge to ensure there are no defects "on the face of the magistrate's decision."[5] That duty, however, is not necessarily coextensive with his authority, and Civ.R. 53(E)(4)(b) appears to grant the judge authority to adopt, reject, modify, hear additional evidence, recommit the matter to the magistrate, or hear the entire matter de novo regardless of whether objections are filed. Prior to its 1998 amendment, however, Civ.R. 53(E)(4) provided a judge with powers beyond adoption of a magistrate's report/recommendation only "[u]pon consideration of the objections," and the notes accompanying the 1998 amendment indicate that the changes were intended to clarify the judge's duty to rule on objections rather than simply consider them, and do not mention any intent to expand the judge's power to modify a magistrate's decision where no objections are filed.[6]
Fortunately, we need not decide this issue here, because the judge is entitled to review those issues appearing on the face of a magistrate's decision regardless of whether objections are filed. In this case, the magistrate's decision separating the functions of guardian of the person and guardian of the estate conflicted with the statutory presumption that one party should perform both functions unless the judge finds that the ward's best interest will be served by separate appointments.[7] Even if Civ.R. 53(E)(4) did not allow the review and modification in Neuger's favor based upon Weingart's objections, the judge was entitled to find that, as a matter of law, the magistrate's decision did not adequately address the presumption that a single person should act as guardian, and thus did not justify a separation of functions. The magistrate's decision would remove Neuger as guardian of the person, but retain him as guardian of the estate because there was insufficient evidence of the necessity of his removal from that position. This is not the same as a finding that Weingart's best interest would be served by separate appointment. Once such a defect is noted, a judge must have authority to review the record to arrive at a just decision. We reject the contention that the judge had no authority to overrule the magistrate's decision separating the functions of the guardian.
Weingart apparently claims the judge was required to specify the "error of law or other defect" in the magistrate's decision, but cites no authority in support of this proposition. Even if such a rule existed, the judgment entry does express the presumption that one person should serve as both guardian of the estate and guardian of the person, even though it does not specifically cite R.C. 2111.06.
Weingart contends that the judge expressed a bias in favor of Neuger before reviewing the evidence. We presume judicial integrity, and a claim of judicial bias must be supported by compelling evidence to defeat this strong presumption.[8] While the judge's statement concerning his personal knowledge of Neuger was inappropriate and irrelevant to the issues in this case, we do not find the statement compelling evidence of bias. Weingart had the burden of proving Neuger's conduct required removal and the judge's decision, as discussed below, was based on the testimony of Weingart's physicians and other caregivers concerning that conduct, and not on Neuger's reputation or the judge's personal belief in his integrity. The first assignment of error is overruled.
The second assignment of error states:
 II. THE TRIAL COURT COMMITTED ERROR IN ABUSING ITS DISCRETION BY AFFIRMING CHARLES NEUGER AS GUARDIAN OF JERRY WEINGART, WHEN CHARLES NEUGER WAS NOT ACTING IN THE BEST INTERESTS OF THE WARD.
Weingart, claiming it was imprudent to separate the functions of guardian of the person and guardian of the estate, objected to that portion of the magistrate's decision that retained Neuger as guardian of the estate. He cited instances of Neuger's alleged failures as guardian of the estate, relied on the hostility Neuger expressed toward Price and Cook, and evidence that Weingart found Neuger objectionable and had refused to see him when he visited. There was, however, evidence that Weingart refused to see Neuger after conversations with Price, and that Weingart would resent anyone he considered responsible for his continued placement at Alterra. Nonetheless, it was Weingart's contention that Neuger's errors as guardian of the estate were compounded by his errors as guardian of the person and that the magistrate erred in failing to remove Neuger entirely.
Once the judge determined that the magistrate's decision was facially defective because it provided for dual guardians without recognizing and addressing the presumption that a single guardian was best, he was entitled to review the record and make the guardianship determination denovo. Although there is no separate statutory provision governing a motion to remove a guardian under R.C. Chapter 2111,[9] such motions are recognized and reviewed under R.C. 2109.24 because a guardian is a fiduciary.[10] A judge must make all guardianship decisions in the best interest of the ward, and the standard of review for such decisions is abuse of discretion.[11]
The judge found that Weingart's placement at Alterra was reasonable, based on evidence that he needed twenty-four hour supervision, that he had threatened suicide, and that his condition would get progressively worse. We cannot find an abuse of discretion in that finding or reverse the finding that Neuger's conduct as guardian of the person was appropriate.
The judge rejected the claim that Neuger had misused funds as guardian of the estate, finding that he placed the piano in Alterra in a good faith effort to increase Weingart's enjoyment of the facility, even though the effort failed. While the judge did not address Weingart's remaining claims concerning the sale of his car and the donation of his books and household items, his decision that Weingart's placement at Alterra was reasonable indicates that it also was reasonable to dispose of his household furnishings and sell his condominium. There was conflicting evidence concerning the value of the car, but there was also testimony that the dispositions complained of were in accordance with Weingart's wishes as expressed in his will. The evidence in the record does not show such misconduct as guardian of the estate that would convince us it was an abuse of discretion to retain Neuger. This assignment of error has no merit.
Judgment affirmed.
It is ordered that appellees recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Probate Court Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J. and TERRENCE O'DONNELL, J. CONCUR
[1] R.C. 2111.04(A).
[2] R.C. 2111.04(A)(2).
[3] See R.C. 2111.031; see, also, Civ.R. 17; Dailey v. Dailey (1983),11 Ohio App.3d 121, 123, 11 OBR 176, 463 N.E.2d 427, 429-430.
[4] R.C. 2111.02(C)(4).
[5] Miele v. Ribovich (2000), 90 Ohio St.3d 439, 443, 739 N.E.2d 333,337.
[6] Staff Notes, 1998 Amendments to Civ.R. 53.
[7] R.C. 2111.06.
[8] In re Disqualification of Olivito (1994), 74 Ohio St.3d 1261,1263, 657 N.E.2d 1361, 1362.
[9] We do not view this as a termination proceeding under R.C. 2111.47. Weingart has not challenged the original proceedings appointing Neuger as his guardian, despite their apparent informality.
[10] R.C. 2109.01; In re Guardianship of Sanders (1997),118 Ohio App.3d 606, 610, 693 N.E.2d 1101, 1103.
[11] In re Estate of Jarvis (1980), 67 Ohio App.2d 94, 96-97 
n. 4, 425 N.E.2d 939, 942 n. 4.