OPINION
{¶ 1} Jack Tedrow ("appellant") appeals the May 2, 2002 decision of the Trumbull County Common Pleas Court, Domestic Relations Division. In that decision, the trial court granted a legal separation to Jeanne Tedrow ("appellee") and also found that appellant's alleged down payment on the marital home was marital property. For the following reasons, we affirm in part, reverse in part, and remand.
 {¶ 2} On March 6, 2000, appellee filed a complaint for legal separation. Appellant filed an answer and counterclaim for divorce on March 30, 2000. Following extensive discovery and negotiation, the parties stipulated to a vast majority of issues, including the custodial and parental rights of their 16-year-old son, Jason. However, appellee suffers from Multiple Sclerosis and the issue of her health care and health insurance remained unresolved, as well as the question of whether appellant's alleged contribution to the down payment on the marital home constituted separate or marital property under R.C. 3105.171.
 {¶ 3} Subsequently, a hearing was held on October 1, 2001. After hearing the evidence presented by both sides, the trial court found, in its May 2, 2002 entry, that "from the testimony of the parties and from lack of any documentation to support his claim, that Husband has not been able to trace the $10,000 down payment alleged as his separate property. Consequently, any down payment was made from marital property." The trial court also granted appellee's motion for a legal separation finding that "it is unlikely that Wife will ever be able to obtain health care coverage based on her existing medical condition at a reasonable cost, and that the drug regimen required by her health condition would reasonably and foreseeably [sic] be prohibitive if prescription health care coverage is not provided to her."
 {¶ 4} Once the trial court had issued its decision, appellant filed a timely notice of appeal and a Civ.R. 60(B) motion for relief from judgment on May 30, 2002. This court then granted appellant's motion for a limited remand so that the trial court could address appellant's Civ.R. 60(B) motion. Following the trial court's ruling on the Civ.R. 60(B) motion, appellant was allowed to proceed with the instant appeal. Appellant asserts the following assignments of error for our review:
 {¶ 5} "[1.] The Trial Court erred to the prejudice of Defendant-Appellant in not recognizing and awarding his separate property claim to the $10,000 down payment plus passive growth on the marital estate.
 {¶ 6} "[2.] The Trial Court erred to the prejudice of Defendant-Appellant in not granting him a Divorce."
 {¶ 7} In his first assignment of error, appellant argues that the trial court should have awarded him the $10,000 as separate property, plus passive interest. Specifically, appellant argues that the hearing testimony demonstrated appellant received the money prior to marrying appellee as part of a settlement from a car accident in 1980. As a result, appellant claims that he has met his burden of proof regarding separate property. We disagree with appellant.
 {¶ 8} It is well settled that a trial court enjoys broad discretion in formulating the division of marital assets and liabilities in a divorce action. Cherry v. Cherry (1981), 66 Ohio St.2d 348; Bugosv. Bugos (Oct. 15, 1999), 11th Dist. No. 98-T-0141, 1999 Ohio App. LEXIS 4875, at *6. As such, a reviewing court is limited to a determination of whether, under the totality of the circumstances, the trial court abused its discretion in dividing the property. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131. The term "abuse of discretion" implies more than just an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 9} Pursuant to R.C. 3105.171(A)(6)(a)(ii), separate property includes "any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage[.]" However, "the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is nottraceable." (Emphasis added.) R.C. 3105.171(A)(6)(b). Thus, traceability becomes the focus in determining whether separate property has lost its character after being commingled with marital property. Peck v. Peck
(1994), 96 Ohio App.3d 731, 734. The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Id. at 734. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. Ross v. Ross (1980),64 Ohio St.2d 203.
 {¶ 10} During his testimony at the hearing, appellant claimed that he advanced $10,000 of his own money as part of the down payment on the marital home, which money had come from a personal injury claim settlement in 1980. However, when asked if he could provide any type of documentation to support his claim, appellant responded "not at this time."
 {¶ 11} Appellant also contends that the testimony of appellee supports his claim as to the character of the $10,000. We again disagree with appellant.
 {¶ 12} During the questioning of appellee, the following exchange took place:
 {¶ 13} "Q: Jack says the $10,000 difference and more came out of money he had before you were married. Do you remember that?
 {¶ 14} "A: Yes, from an accident he had.
 {¶ 15} "Q: Okay. Jack said that before you and he got married he had been working and he lived at home for a long time and he saved up money. Do you remember that?
 {¶ 16} "A: No. He bought a car with his money."
 {¶ 17} Based on the above exchange, it is unclear as to what appellant did with his money. Appellant argues that a subsequent follow-up question asked during the cross-examination of appellee satisfies the burden placed upon appellant to trace his separate property. In that follow-up, appellee was asked, "Do you agree $10,000 of your down payment was from money that Jack had before you were married?" In her disjointed response, appellee stated "He got it from an accident he was in."
 {¶ 18} Various courts have held that in order to properly trace separate property under R.C. 3105.171(A)(6)(b), some type of supporting documentation is required in addition to the bald assertions of one of the parties. See Peck, supra; Woolum v. Woolum (June 28, 1993), 12th Dist. No. CA92-12-116, 1993 Ohio App. LEXIS 3314; Wells v. Wells (May 8, 1989), 12th Dist. No. CA88-04-050, 1989 Ohio App. LEXIS 1648. Other than his statements made at the hearing, appellant has failed to provide any type of bank statements, cancelled checks, deposit slips, or injury settlement documentation to bolster his claim. In response, appellant also claims that the deed entered into evidence provides proof as to the purchase price of the house. Contrary to appellant's assertion, our review of the deed entered into evidence by appellant contains no dollar amount relating to the purchase price of the home. Further testimony also reveals that both appellant and appellee were working prior to and during the course of the marriage.
 {¶ 19} The record also reveals that appellant's memory regarding the location of his monies is quite poor. During cross-examination, appellant could not even remember which account or accounts were involved in the distribution of the $10,000. While his memory lapse may be attributable, at least in part, to his inability to locate his records, appellant did not document anything about which he testified. Moreover, the record suggests appellant made no effort to document his pre-marital financial status, which, if documented, could have bolstered his claim.
 {¶ 20} During his testimony, appellant claimed to have received the $10,000 injury settlement in 1980. The couple in this case did not marry until August 23, 1982, and did not take out a mortgage on the marital home until December 21, 1984. As a result, even if appellee's testimony confirmed that appellant received this money from the accident, appellant has still failed to demonstrate that the money he allegedly received four years prior to the purchase of the marital home was still a traceable part of the couple's savings at the time they made the down payment on the marital residence. See Peck, supra, at 734.
 {¶ 21} Moreover, the record shows the lower court's finding that the down payment on the home was marital property turned upon the credibility of the marital partners. The credibility of witnesses and the relative weight of each piece of evidence are left to the discretion of the trier of fact. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,81. As a result, this court cannot attempt to reinterpret the testimony presented at the hearing. Based on the above, we conclude the lower court reached a decision that was not unreasonable, arbitrary, or unconscionable in view of the evidence before it. The trial court's judgment was not an abuse of discretion and appellant's first assignment of error is overruled.
 {¶ 22} In his second assignment of error, appellant argues that since he satisfied the requirements of R.C. 3105.01(J),(K), the trial court was required to grant his request for a divorce.
 {¶ 23} A trial court has broad discretion in determining the proper grounds for a divorce, and a reviewing court will not reverse that determination absent a finding that the trial court's decision was unreasonable, arbitrary or unconscionable. Buckles v. Buckles (1988),46 Ohio App.3d 102, 116. However, a trial court's decision denying a divorce to parties, who have lived separate and apart for more than one year without cohabitation or when incompatibility is not disputed, should be rendered only in the rare case where the evidence clearly warrants it.
 {¶ 24} Under R.C. 3105.01, a court of common pleas may grant a divorce when the husband and wife have lived separate or apart for one year without cohabitation or for incompatibility. As a result, appellant argues that he should have been granted a divorce because he has proven that the parties are incompatible and that they have lived separate and apart for more than one year. R.C. 3105.01(J). The uncontroverted testimony of the parties supports appellant's argument.
 {¶ 25} As to appellee's medical condition, the parties testified at the hearing that appellee was diagnosed with Multiple Sclerosis over eleven years ago, and that her condition has continued to worsen in recent years. There also was testimony that appellee is now unable to work as a result of the disease. However, no medical evidence or documentation was provided. While appellee's medical condition was not disputed, there is a paucity of evidence in the record as to the impact of that condition on the availability and cost of medical insurance coverage and prescription drug coverage resulting from that condition in appellee's case. Appellee did not provide any detailed evidence as to the type or cost of health care coverage and prescription coverage available to her. Under these circumstances, the preponderance of the evidence in the record does not support the trial court's speculation that health care coverage for appellee is unlikely.
 {¶ 26} To support a denial of a divorce where, as in this case, it is undisputed that the parties have lived separate and apart without cohabitation for more than one year, the evidence must clearly demonstrate that the health impaired party cannot obtain health care or that the other party cannot provide enough financial support to assist the health impaired party in receiving health care. Mere speculation is not sufficient.
 {¶ 27} In the past, this court has deferred to the trial court's discretion in granting a legal separation instead of a divorce when issues of health care are involved. We have only done so, however, when either there was ample evidence that health care coverage was clearly not available or affordable post divorce, or when mistakes of law have been made with respect to the issue of health care coverage. See Mahon v.Mahon (Mar. 12, 1999), 11th Dist. No. 98-T-0050, 1999 Ohio App. LEXIS 938; Harcourt v. Harcourt (Sept. 30, 1998), 11th Dist. No. 97-A-0066, 1998 Ohio App. LEXIS 4624. In this case, no such evidence or mistakes appear in the record.
 {¶ 28} R.C. 3105.01(J) is "grounded upon the public policy that living apart for a long period of time is the best evidence that a marriage has broken down, and that a divorce should be available under these circumstances * * *." Mahle v. Mahle (1985), 27 Ohio App.3d 326,328, citing Dailey v. Dailey (1983), 11 Ohio App.3d 121, 122. This statutory provision essentially constitutes a state policy recognition that people who cannot live and cohabitate with one another for more than one year should not be compelled to remain married to each other, if either party wishes to end the marriage. Zalewski v. Zalewski (Jan. 22, 1987), 8th Dist. No. 51470, 1987 Ohio App. LEXIS 5629. Indeed, the concept of compelled marriage is contrary to the evolution of Ohio's divorce statute. While there may be some rare instances where the granting of a legal separation instead of a divorce may be warranted, such a ruling must be clearly and unequivocally supported by the evidence in the record, especially since such a ruling deprives the party seeking the divorce of the right to marry in the future.
 {¶ 29} In this case however, the record is incomplete on this issue. While appellee's medical condition has been established, the availability or non-availability and cost of medical and prescription drug coverage have not been adequately addressed. Moreover, to the extent that the issue of appellee's medical and prescription drug coverage is one of cost, this issue can be addressed by a disproportionate distribution of marital assets, instead of a legal separation. Such analysis, however, is best left to the trial court. Based on the record before us, appellant's second assignment of error has merit.
 {¶ 30} For the foregoing reasons, the decision of the trial court is affirmed as to its determination that the $10,000 down payment on the marital home was made with marital property. We reverse the trial court's decision to grant a legal separation and remand this matter back to the trial court so that it may hold an additional evidentiary hearing and render a decision consistent with this opinion.
DONALD R. FORD, P.J., and JUDITH A. CHRISTLEY, J., concur.