[Cite as *Calanni v. Stowers*, 2018-Ohio-4025.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106618**

# CHARLES A. CALANNI, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# MEGHAN E. STOWERS, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Lakewood Municipal Court
Case No. 2016 CVG 02396

**BEFORE:** McCormack, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** October 4, 2018

[Cite as *Calanni v. Stowers*, 2018-Ohio-4025.]

**ATTORNEY FOR APPELLANT**

Kenneth D. Myers
6100 Oak Tree Blvd., Suite 200
Independence, OH 44131


**FOR APPELLEE**

Meghan E. Stowers, pro se
1270 Lakeland Ave.
Lakewood, OH 44107

TIM McCORMACK, J.:

{¶1} Plaintiffs-appellants Charles and Cynthia Calanni appeal from the Lakewood Municipal Court's judgment on their claim for damages relating to an eviction action. For the following reasons, we affirm.

## Procedural History and Substantive Facts

{¶2} On December 16, 2016, the Calannis filed a complaint for forcible entry and detainer and for monetary damages against their tenant, defendant-appellee Meghan Stowers. The court granted the eviction, ordered the tenant to vacate the premises, and scheduled the matter for a hearing on damages. On February 16, 2017, a magistrate conducted the hearing on damages. Charles Calanni (hereinafter "Calanni") and Meghan Stowers appeared for the hearing.

{¶3} Calanni presented his own testimony, an itemized list of purported damages and associated costs, and several pictures of the alleged damage to the apartment formerly occupied by Stowers. Stowers offered her own testimony.

{¶4} The evidence established that Charles and Cynthia Calanni, as landlords, entered into a rental agreement with Stowers for residential property in Lakewood, Ohio at a monthly rent of $575. Stowers lived in the property from April 2013 until January 2017, at which time she was ordered by the court to vacate the premises. Calanni introduced as evidence the rental agreement between the parties. Calanni asserted that the rental agreement prohibits Stowers from "hanging []pictures, painting, redecorating, or other alterations without the written permission of the owner." Calanni also asserted

that Stowers acknowledged on the rental agreement that she was in receipt of the apartment in "excellent condition."

**{¶5}** Calanni testified that Stowers failed to pay rent for November 2016, December 2016, and January 2017, and that she vacated the premises on January 15, 2017. He also claimed that Stowers failed to return her apartment keys. Stowers testified, however, that she paid November's rent, although she did not have a receipt. She stated that Calanni never provided a receipt to her for rent and she typically paid in cash. Stowers conceded that she did not pay December's rent. She testified that she moved out in December and returned the keys to Calanni at his automotive shop on January 2.

**{¶6}** Calanni claimed Stowers owed back rent for November 2016 ($215), December 2016 ($575), and January 2017 ($575), in addition to late fees ($57.50 per month), for a total of $1,537.50. Regarding alleged damage to the premises, Calanni claimed damages in the amount of $3,721.78 above and beyond ordinary wear and tear, referring to the invoice purportedly prepared by Calanni's subcontractor, Brian Livingston. The alleged damages to the property included: drywall repairs ($298.47); painting ($1,295); cleaning ($567.23); hardwood floor repairs ($34.92); carpet replacement ($1,197.64); furniture moving ($345); lock repairs ($42.39); lock replacement ($39.67); smoke detectors ($33.42); window repairs ($129.12); light fixture replacement ($89.73); blind replacement ($68.42); and plumbing ($148).

{¶7} Calanni testified that he incurred moving costs to remove Stowers's furniture and other items, and in support, he introduced several pictures of the premises that he claimed to have taken after Stowers moved out. Stowers testified, however, that a number of items in the pictures, such as a table, boxes, bags of clothing, small chair, ironing board, and a filing cabinet, had been moved prior to her move-out date of January 2. She conceded that the two large chairs, a couch, and a bed remained.

{¶8} Calanni testified as to the general condition of the property, claiming that despite the prohibition in the rental agreement, Stowers had hung numerous items, including pictures and stickers. As a result, there were several nail holes, remnant nails, and damage to the walls, ceiling, and crown molding from the nails. Stowers admitted that she hung pictures, a "hanging star," a wreath, and lights. The pictures Calanni introduced included pictures of a wreath and the hanging star; however, Stowers testified that she had removed those items from the premises. Regarding the stickers, Calanni stated that "when you take off the stickers, it leaves stains on the drywall." Stowers testified that the sticker of which Calanni referred was a hologram that "comes right off. It doesn't tear. [It is] meant for the wall." Calanni claimed that due to the nail holes and stickers throughout the apartment, he incurred damages to the drywall and painting of the entire apartment. He stated that he had last painted the apartment "approximately right before [Stowers] moved in."

{¶9} Regarding the flooring, Calanni testified that Stowers had damaged the hardwood floor under the carpeting. He also testified that the carpeting throughout the

apartment, which was "three years and nine months old," and "in excellent condition [upon move-in]," was damaged and needed to be replaced; it was "destroyed beyond any recognition." Calanni identified a red stain on the carpet. Stowers acknowledged that she spilled red hair dye on the carpet. In support of his argument that the carpet was "in excellent condition" prior to Stowers's occupancy, Calanni identified the rental agreement wherein Stowers acknowledged receipt of the apartment in "excellent condition." He did not provide receipts for the carpet installation that occurred prior to Stowers's tenancy. Stowers testified that the carpet was not new when she moved in, but it had been steam-cleaned.

{¶10} Calanni further testified regarding alleged damage to the locks, missing smoke detectors, broken windows, broken light fixtures, broken window blinds, and a clogged toilet. Calanni claimed that Stowers broke her key in the lock, which Stowers denied, stating that she had returned the keys to Calanni. Stowers testified that the window and light shade were broken when she moved into the apartment. Stowers testified that she had numerous problems with the toilet throughout her tenancy and she had called Calanni to make repairs in the past.

{¶11} Finally, Calanni testified that his wife, Cynthia, had cleaned the entire apartment and incurred costs associated with cleaning beyond a normal amount.

{¶12} After considering the evidence, the magistrate issued a decision on February 23, 2017, recommending judgment in favor of the Calannis in the amount of $2,262.32, which included a recommended award of $1,480 for back rent (November

2016, December 2016, and January 2017) and late fees (November 2016 and December 2016); a credit of $535; and $1,317.32 for other damages. The magistrate explained that "the premises were left in a condition which would warrant one month to clear out, clean, and ready the unit for the next tenant" and therefore applied the $535 from Stowers's security deposit as credit against the back rent and late fees awarded.

{¶13} In an eight-page decision, the magistrate addressed each item on the Calannis' list of damages. He found that the Calannis established by sufficient evidence that they incurred damages beyond ordinary wear and tear as follows: (1) cleaning ($518.50); (2) carpet replacement ($598.82); and furniture moving ($200).

{¶14} In support of his finding regarding the claim for cleaning the premises, the magistrate stated as follows:

Though the plaintiff testified that the photographs were taken sometime after the defendant had vacated, the defendant was more credible when she testified that the pictures were taken before she vacated the unit * * *. She testified that most of the personal possessions were removed * * * before her move-out date of January 2, 2017, with only two larger chairs, a couch, and a bed remaining. Though the photographs do not fairly and accurately depict the actual condition of the premises once the defendant had moved out, the defendant offered no testimony that she or anyone on her behalf had cleaned the unit. * * * [I]t is clear that cleanliness is not one of her stronger attributes, which leads to the finding that the unit needed more than the

normal level of cleaning. And although the plaintiff claimed $567.23 as the cleaning expense, $48.73 of that amount for "cleaning materials" is not awarded since receipts and invoices * * * were not provided.

{¶15} The magistrate awarded half of the requested amount for carpet replacement, finding that an allowance for depreciation is required, stating that "[t]he last of a long line of tenants cannot be assessed for the entire cost of a carpet that is 10 years old when several tenants have enjoyed the benefit of the carpeting." The magistrate noted that the Calannis failed to provide evidence to substantiate the age of the carpet and the defendant stated that she did not believe the carpet was new when she moved in. The magistrate therefore determined the carpet to be five years old and, allowing for depreciation and the average life expectancy of carpeting of ten years, recommended the Calannis receive $598.82 for the cost to replace the carpet.

{¶16} Regarding the Calannis' claim for furniture moving, the magistrate awarded $200 of the requested $345. The magistrate found Stowers' testimony more credible regarding which items were left behind, and he found the invoice of Brian Livingston, that was submitted by Calanni, lacked sufficient detail, such as an hourly rate and the number of hours worked, and it quoted an excessive amount, considering the limited number of items being moved. The magistrate found the reduced amount to be a reasonable cost for removing the bulk furniture (two chairs, a couch, and a bed) that remained in the apartment.

{¶17} The magistrate also found that the Calannis failed to prove by sufficient evidence damages beyond normal wear and tear for the following: hardwood floors; lock repair and replacement; smoke detectors; window repairs; light fixture replacement; blind replacement; and plumbing.

{¶18} In support of his decision regarding these repairs, the magistrate found Calanni not credible when he testified that Stowers damaged the hardwood floors when the floor was covered with wall-to-wall carpeting throughout the apartment and no photos of the allegedly damaged floor were introduced. Noting a dispute among the parties concerning whether the apartment keys had been returned, Stowers's more credible testimony regarding the lock and the keys, and the lack of specific information on the contractor's invoice regarding "what repairs were performed or on what lock," the magistrate found the evidence "woefully lacking concerning a damaged lock or its repair." The magistrate found Stowers more credible when she testified that there was only one smoke detector, she removed it because it was making a noise, and she left the detector in the unit. He noted that "[i]f there was more than one missing smoke detector, one would expect a photograph of the second smoke detector as well." Regarding the light fixture, the magistrate found that Stowers credibly testified that she left the glass globe of the fixture in the unit, the broken chandelier shade was in that condition upon move-in, and the Calannis failed to provide a separate invoice that would accurately reflect the cost of replacement for the glass globe and the shade. The magistrate stated that he refused to speculate on damages.

{¶19} Regarding the plumbing, the magistrate stated that although the Calannis claimed the toilet was clogged, Calanni offered a photograph of a toilet that did not appear to be clogged, and he offered the contractor's "nonspecific" invoice for "plumbing" that failed to identify the work involved or the hours expended. The magistrate found Stowers more credible when she testified that the toilet was not clogged and she in fact had numerous problems with the toilet during her tenancy that her landlord did not address. The magistrate further stated that the existence of "an older, defective toilet in a rental unit is not the responsibility of a tenant, and a landlord cannot abdicate his duties by attempting to assess damages for such a toilet and assign them to the tenant upon move-out."

{¶20} Addressing the windows and the blinds, the magistrate once again found Stowers more credible than Calanni. The magistrate stated that while Calanni testified that three or four windows were broken, he only offered one picture of a window that Calanni claimed contained a bullet hole. The magistrate noted that from the "blanket invoice" of the contractor, it was "unclear what repairs were performed, whether to the glass or the window itself, or even how many windows and what window(s) he repaired."

{¶21} Finding the Calannis' claim for blind replacement equally unsupported, the magistrate stated:

> The plaintiff claims that the defendant damaged four (4) window mini blinds and offered the invoice of Brian Livingston * * * as proof. That

invoice did not specify the number of blinds that were damaged/replaced, the rooms the mini blinds were allegedly in, or the cost per blind. In addition, * * * the plaintiff failed to provide a separate invoice for the cost of each blind or any proof whatsoever as to the cost of the blind itself. A blanket invoice from the contractor does not constitute sufficient proof of damages in this instance. * * * Moreover, the plaintiff introduced Plaintiff's Exhibit 18, which depicted three separate photographs of what the plaintiff claims to be three separate mini blinds, despite his claim that four mini blinds were damaged and needed to be replaced. Even so, despite plaintiff's claim that the top left and top right photographs of [the exhibit] are two different mini blinds from two different rooms, it is the finding of this court that they are, in fact, the exact same window blind as evidenced by the same slats being bent and the same marrings of the woodworking under the window. The plaintiff did little to enhance his credibility by insisting that they were two distinct mini blinds.

{¶22} Finally, the magistrate found that the Calannis failed to provide sufficient evidence that the alleged damage to the drywall and the need for painting was beyond ordinary wear and tear. Regarding the drywall, the magistrate found that the number of nail holes was not excessive, "nor were the walls damaged by the placement of the nail holes." The magistrate found Stowers's testimony more credible when she testified that the marring of the plaster in Calanni's photo (exhibit No. 3) was there when she moved

in. Further, the magistrate found Calanni not credible when he testified that Stowers caused the water damage to the ceiling as depicted in another of Calanni's photos (exhibit No. 7).

{¶23} Regarding the Calannis' claim for painting, the magistrate concluded as follows:

The defendant resided in the premises for three years and eight months. Such a duration would strongly suggest a need for repainting to "freshen" the unit for the next tenant. Aside from that logic, however, the plaintiff testified that the need for repainting flowed from the drywall repair which he claims was necessitated partly by the placement of nail holes. In view of the finding * * * that the number of nail holes was not excessive and that the placement of the nail holes did not damage the surrounding drywall, an award for repainting of the entire unit cannot be made. Moreover, a review of those photographs introduced by the plaintiff, which depict the walls, do not show them to be damaged or excessively dirty.

{¶24} The magistrate therefore found the Calannis failed to provide sufficient evidence to establish that they incurred damages for drywall repair and painting beyond ordinary wear and tear.

{¶25} On March 13, 2017, the Calannis filed preliminary objections to the magistrate's report, in which they objected to the magistrate's finding regarding the date Stowers vacated the premises and generally objected to the magistrate's "reductions and

calculations" concerning the other alleged damages. The Calannis also requested leave to file supplemental objections once a transcript of the hearing was completed. The court granted the Calannis' request, and the Calannis filed supplemental objections on April 10, 2017.

{¶26} In their supplemental objections, the Calannis withdrew their initial objection to the magistrate's factual finding that Stowers vacated the premises on January 2, 2017, acknowledging that the date is irrelevant because the magistrate recommended an award of rent for December and January. The Calannis did not further object to the magistrate's recommendation concerning back rent and late fees.

{¶27} In their supplemental objections, however, the Calannis objected specifically to the magistrate's recommendation concerning the amount of damages for carpet replacement and the denial of damages for drywall repairs, painting, lock repairs and replacement, smoke detectors, window repairs, light fixture replacements, and plumbing. The court scheduled a hearing on the supplemental objections for September 13, 2017, limiting the hearing to the issues raised in the Calannis' supplemental objections to the magistrate's conclusions of law.

{¶28} During the hearing before the court, neither plaintiff-appellant Cynthia Calanni nor defendant-appellee Stowers appeared. Calanni once again testified concerning the alleged damages. Brian Livingston also testified. Livingston testified that he provided Calanni with an estimate for the necessary repairs to the Lakewood premises, he performed the work, and Calanni paid him or he expected Calanni to pay

him, in cash or in trade for services. Livingston confirmed that Calanni's pictures accurately depicted the condition of the apartment when he began his repair work. He stated that the premises was in poor condition, the walls were "damaged pretty good," the entire apartment required painting in order to match the areas where holes were patched, and the carpet was in "very poor shape," requiring replacement. He also testified generally about the remaining repair issues.

{¶29} On November 9, 2017, the trial court issued an order adopting the magistrate's recommendation in total and entered judgment in favor of the Calannis for $2,262.32.

{¶30} In its entry, the court noted its obligation to make an independent review of the case based upon the record before the court, while deferring to the magistrate the resolution of the credibility of the witnesses. Indeed, the court determined that "[m]uch of the case turned on the credibility of the witnesses." The court also noted that both the magistrate and the court had the opportunity to review Calanni's testimony. Additionally, the court noted that while it may accept additional evidence by an objecting party, that evidence, pursuant to Civ.R. 53(D)(4)(d), must be evidence that "could not with reasonable diligence have [been] produced * * * for consideration by the magistrate."

{¶31} In addressing the Calannis' objections, the court found that the testimony and evidence presented by Calanni to the court was repetitive of the evidence presented to the magistrate; the objections were merely an expression of dissatisfaction with the

magistrate's decision and an improper attempt to receive a new trial on damages; the testimony of Brian Livingston was "beyond the scope of the issue before the court"; and the evidence was contrary to the purposes of Civ.R. 53. The court explained that Livingston was not produced as a witness at the magistrate's hearing on damages; rather, the Calannis produced only Livingston's invoice. The court stated that only after the magistrate raised concerns regarding the costs and scope of repairs made, as provided in Livingston's invoice at the hearing before the magistrate, did Calanni offer Livingston's testimony.

{¶32} The court found Calanni's testimony was "vague and evasive" and "contrary to his own witness." The court questioned the "validity of the exhibits" and the overall credibility of the evidence, specifically noting discrepancies between exhibits:

> [I]n the hearing before the court on objections, the plaintiffs presented an undated invoice signed by both Charles Calanni and Brian Livingston for work performed (Plaintiffs Exhibit 24). The handwritten notes contained on this exhibit are contrary to the identically signed exhibit that the plaintiffs submitted to the magistrate (Plaintiffs Exhibit 6). No explanation was offered by the plaintiffs regarding the discrepancies in these exhibits. Comparison of these documents show material alterations in light of findings set out in the magistrate's report. In addition, while Mr. Calanni testified that the notes on Plaintiffs' Exhibit 6 were written by Mr. Livingston, * * * the handwriting is distinctively different from the

notes on Plaintiffs' Exhibit 24, which Mr. Livingston testified before the court were his own personal notes.

{¶33} The court also concluded that the evidence does not support the Calannis' claims for additional damages. The court stated that although the Calannis presented a claim for 17½ hours for cleaning the apartment, including washing the walls to remove smoke odors and damage, they also claimed damages for repainting the entire apartment. Regarding the carpet, the court stated that although Calanni testified that the carpet was installed just before Stowers took possession, neither Calanni nor Livingston, who claimed to have installed the new carpet, could produce any records to support that the purchase was made or produce any receipts for the carpet the Calannis claim was installed after Stowers vacated the premises. The court noted that the Calannis failed to provide evidence of depreciation, quality, or life expectancy of the carpet.

{¶34} The court further noted that the Calannis failed to provide receipts for cleaning expenses, paint, or other supplies. And while they produced photographs of the alleged damage to the premises, which were disputed by Stowers, the Calannis failed to produce evidence to show that any of the work was actually performed. Regarding the drywall and painting, the court stated:

> In light of the plaintiffs' claim that substantial plastering and repainting of the apartment was required due to a few stickers on the wall and minor nail holes for hanging pictures, the plaintiffs not only failed to prove that the work was actually completed, but also that it was for damage beyond normal wear and tear for the time occupied by the defendant and that the costs claimed were fair and reasonable.

**{¶35}** Finally, the court concluded that the record showed evidence of some damage for which the Calannis were entitled to compensation, and considering all of the evidence as well as "serious issues concerning credibility of the plaintiffs' evidence," the court found that the damages determined by the magistrate are supported by the record. The court adopted the magistrate's decision in its entirety.

**{¶36}** The Calannis now appeal the trial court's order adopting the magistrate's decision, claiming the trial court erred in failing to award the requested damages.

### Final Appealable Order

**{¶37}** We note initially that this court sua sponte ordered the Calannis to show cause why the matter should not be dismissed for lack of a final, appealable order, noting that the Calannis commenced the case in the municipal court against Stowers and "all other occupants" of the premises, arguably John Doe defendants. If a case with John Doe defendants is resolved in less than a year without service on the John Does, without abandonment of those claims, or without Civ.R. 54(B) language, there may not be a final, appealable order. *Mosley v. 131 Foods, Inc.*, 8th Dist. Cuyahoga No. 87696, 2006-Ohio-5719; *Militiev v. McGee*, 8th Dist. Cuyahoga No. 91356, 2009-Ohio-142.

**{¶38}** In response, the Calannis filed a notice of compliance with the court's order, asserting that the magistrate's decision explicitly stated that "Defendant All Other Occupants [are] dismissed from [the] case." The Calannis did not object to this statement. Because the Calannis did not object and the trial court adopted the

magistrate's decision in its entirety, "all other occupants" were in fact dismissed. The Calannis contend that the trial court's order is therefore final and appealable.

{¶39} In light of the above, we find that the Calannis have abandoned all claims against "all other occupants." The trial court's judgment was therefore a final, appealable order. *See Harris v. Plain Dealer Publishing Co.*, 40 Ohio App.3d 127, 129, 532 N.E.2d 192 (8th Dist.1988).

Law and Analysis

{¶40} The Calannis contend that the trial court erred in failing to award the requested damages, stating that their evidence sufficiently supported their claim for damages. The Calannis further claim that "the biggest issues" concerned the trial court's failure to award any damages for drywall repair and repainting, arguing that Stowers's use of nails constituted a breach of the rental agreement and resulted in damage to the walls that necessitated these repairs, which were in fact made.

{¶41} When ruling upon objections to a magistrate's decision, the trial court is required to make an independent review of the case. Civ.R. 53(D)(4)(d). In so doing, the trial court must decide "'whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and where the [magistrate] has failed to do so, the trial court must substitute its judgment for that of the [magistrate].'" *Gobel v. Rivers*, 8th Dist. Cuyahoga No. 94148, 2010-Ohio-4493, ¶ 16, quoting *Inman v. Inman*, 101 Ohio App.3d 115, 118, 655 N.E.2d 199 (2d Dist.1995). Upon its review, the trial court may hear additional evidence if necessary. *Vannucci v. Schneider*, 8th Dist.

Cuyahoga No. 105577, 2018-Ohio-1294, ¶ 17; Civ.R. 53(D)(4)(d). Thus, the trial court must conduct a de novo review of the case in order to reach its own conclusions. *In re A.S.*, 8th Dist. Cuyahoga No. 101339, 2014-Ohio-4936, ¶ 5.

**{¶42}** On appeal, our review is more limited. A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 99498 and 100229, 2014-Ohio-1508, ¶ 17. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable, not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An "abuse of discretion" therefore describes a judgment "comporting neither with the record nor reason." *Hissa* at ¶ 17.

**{¶43}** Moreover, a judgment that is supported by some competent credible evidence going to all the essential elements of the case will not be reversed by an appellate court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978); *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

**{¶44}** We find the magistrate's findings of fact and conclusions of law regarding the Calannis' claim for damages thoroughly detailed the Calannis' claim and the evidence and testimony presented, it discussed at length the repairs allegedly necessitated by Stowers's damage, and it considered the damage to the items as compared with expected reasonable wear and tear. The magistrate repeatedly questioned Calanni's credibility, noting several inconsistencies and inaccuracies in his testimony and his evidence lacking

sufficient detail and support. The magistrate therefore ultimately found Stowers more credible, and he found the majority of the Calannis' claim for damages were either unsupported or did not extend beyond reasonable wear and tear.

{¶45} The record demonstrates that the trial court then conducted an independent review of the magistrate's decision, which included addressing the Calannis' claims through a second hearing, in which the court heard the testimony of Calanni and his subcontractor. The trial court engaged in an extensive evaluation of all of the evidence submitted by the parties concerning each item in the Calannis' claim for damages. It deferred to the magistrate's assessment regarding credibility and found the magistrate's decision to be supported by the evidence.

{¶46} As the trial court noted, much of the Calannis' claim for damages turned on the credibility of the witnesses, which both the magistrate and the trial court found lacking in Calanni. And regarding the initial hearing, the trial court deferred to the magistrate's assessment of the credibility of both Calanni and his tenant. It is well settled that when testimony is in dispute, we defer to the trier of fact's credibility determination. *Calanni v. Kolodny*, 8th Dist. Cuyahoga Nos. 105269 and 105271, 2018-Ohio-1289, ¶ 11, citing *Fanous v. Ochs*, 8th Dist. Cuyahoga No. 98649, 2013-Ohio-1034, ¶ 18. The trier of fact "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co.,* 10 Ohio St.3d at 80, 461

N.E.2d 1273. Consequently, the reviewing court is "guided by a presumption that the findings of the trier of fact were indeed correct." *Id.*

**{¶47}** The trial court also found the magistrate's findings are supported by the record. It noted that the Calannis' evidence, some of which was questionable and/or did not account for reasonable wear and tear, did show some damage to the premises for which the Calannis were entitled compensation.

**{¶48}** Regarding the carpet, the magistrate found the Calannis' cost for carpet replacement lacked substantial detail and did not account for depreciation and normal wear and tear, thus awarding only half of the requested amount. In adopting the magistrate's findings, the trial court noted the discrepancy in the witnesses' testimony, the lack of credible evidence in support of Calanni's claim for replacement of the entire carpet, and the Calannis' failure to account for depreciation due to reasonable wear and tear, quality, and life expectancy of the carpet. In a case between a landlord and a tenant, a landlord is not entitled to damages for repairs to a rental property where the damages resulted from reasonable wear and tear. *Bibler v. Nash*, 3d Dist. Hancock No. 5-05-09, 2005-Ohio-5036, ¶ 18. Moreover, "if the trier of fact believes the evidence regarding the cost of repair has been inflated, the trier of fact always has the discretion to adjust the damages accordingly." *Curtis v. Vazquez*, 11th Dist. Ashtabula No. 2003-A-0027, 2003-Ohio-6224, ¶ 30. And a party's disagreement with the trier of fact as to the appropriate amount of damages is not grounds for reversal. *Arendt v. Price*, 8th

Dist. Cuyahoga No. 101710, 2015-Ohio-528, ¶ 16, citing *Sotnyk v. Guillenno*, 6th Dist. Lucas No. L-13-1198, 2014-Ohio-3514, ¶ 11.

**{¶49}** Regarding the claim for drywall repairs and painting of the entire apartment, the Calannis contend that Stowers violated the rental agreement by placing holes in the walls for hanging pictures and decorations, and they incurred damage to the plaster and paint as a result. In support, the Calannis produced photographs of nail holes in the walls, and Stowers admitted to hanging certain pictures and other decorations on the walls.

**{¶50}** The magistrate, in declining to award the Calannis any damages relating to drywall repairs or painting, found that the damage caused by the nail holes did not exceed reasonable wear and tear. The magistrate specifically concluded that "the number of nail holes is not excessive, nor were the walls damaged by the placement of nail holes." The magistrate also determined that Stowers's tenancy of three years and eight months "strongly suggest[ed]" a need for repainting to "freshen the unit" for the next tenant. The magistrate further stated that although the Calannis claimed the drywall repairs flowed from the nail hole damage, and the drywall repairs necessitated the repainting, because he found the nail holes were not excessive and the nails did not damage the walls, "an award for repainting of the entire unit cannot be made." The magistrate also found that the Calannis' photographs do not depict "damaged or excessively dirty" walls. In adopting the magistrate's decision, the trial court found that the Calannis failed to produce evidence demonstrating that the plastering and repainting constituted damage

beyond ordinary wear and tear for the duration of the tenancy or that the work was actually completed.

{¶51} Courts generally view the need for cleaning and repainting costs between tenants, even for leases as short as one year, as the sole responsibility of the landlord. *See, e.g., Swartz v. Luker*, 12th Dist. Clermont No. CA91-07-051, 1991 Ohio App. LEXIS 6319 (Dec. 30, 1991) (finding cleaning and painting costs did not constitute damage beyond ordinary wear and tear); *see also Kelley v. Johnston*, 4th Dist. Gallia No. 01CA5, 2001-Ohio-2622 (finding carpet cleaning and painting costs did not exceed ordinary wear and tear after a three and one-half year tenancy). Landlords "cannot seek to hold [their tenants] responsible for its own required maintenance of the premises. This is a normal cost of doing business." *Kovac v. Whay*, 8th Dist. Cuyahoga No. 65469, 1994 Ohio App. LEXIS 4720, 15 (Oct. 20, 1994).

{¶52} Normal nicks and other minor indentations in walls occur in the ordinary course of occupancy of residential premises. And patching and other minor drywall repairs are invariably part of the preparation for painting. Therefore, although the nail holes admittedly made by Stowers were in violation of the lease, the Calannis had the burden to show that the expenses they incurred relating to the plastering and painting were for remedying only those prohibited nail holes, exclusively and apart from the ordinary expenses of patching and/or painting between tenants. The record demonstrates that the Calannis failed to sustain their burden.

{¶53} In light of the above, we cannot conclude that the trial court abused its discretion in adopting the magistrate's decision.   The Calannis' sole assignment of error is overruled.

{¶54} Judgment affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR