Seabold, Appellee, *v.* Seabold, Gdn., et al., Appellants.

(No. 1172—Decided May 12, 1948.)

*Messrs. Keep & Scholz,* for appellee.

*Messrs. Myers, Horan & Ashenbach* and *Mr. Frank E. Stevens,* for appellants.

DOYLE, P. J. The action here on appeal from the Court of Common Pleas of Lorain county was brought by the appellee herein, Julia Seabold, under authority of the Uniform Declaratory Judgments Act (Section 12102-1 *et seq.*, General Code), to have declared ''that the marriage contract between herself and * * * Edward Anthony Seabold * * * constituted a valid and legally binding marriage upon both of the parties thereto, and that by reason thereof she became the lawfully wedded wife of the said Edward Anthony Seabold * * *.''

It appears in the pleadings and the evidence that Edward Anthony Seabold in 1935 was committed to the Toledo State Hospital for the mentally ill, following an adjudication in the Probate Court of Lorain county that he was an incompetent person; in 1938 he was released from the hospital on a ''trial visit'' and returned to his home in Elyria; in 1939, his brother, Carl Seabold, was appointed by the Probate Court to be guardian of his person and estate; in 1940 he entered into a marriage contract with Julia Nagy, and they were ceremonially married in the city of Covington, Kentucky, under authority of a license there obtained from the public official in charge; they lived together as husband and wife until April, 1942, when he returned to the state hospital for treatment; in June, 1942, he was again released and resumed a marital relationship until July, 1943, when he again returned to the hospital, where he remained until his release in November, 1943; on February 24, 1944, he was taken back to the institution, where he has been since confined.

It was claimed by the wife that an uncertainty has been cast upon the validity of her marriage, for the reason that her husband was under guardianship at the time of their marriage, and that through this un-

certainty she is placed in a position of peril and insecurity; that "her status as the lawful wife of the said Edward Anthony Seabold is uncertain and undetermined, and might later lead to a controversy between the parties or their heirs * * * unless the matter is settled by this court * * *."

Issues were joined by the respective answers of the guardian of the ward, Seabold, and his various children by a former marriage.

At the conclusion of the trial, in which many witnesses were heard on the question of the mental capacity of the ward at the time of the marriage, the court found that the parties had entered into a valid and subsisting marriage. From that judgment the present appeal, on questions of law, has been taken.

■ Section 12102-1 *et seq.*, General Code, authorize the rendition of declaratory judgments. By virtue of authority therein granted, a declaratory judgment may be resorted to when it will serve some practical end in quieting or stabilizing an uncertain or disputed jural relation, growing out of a ceremonial marriage, when the competency of one of the parties to enter into such a relationship is in dispute.

■ It is asserted that, under Ohio law, the ward, Seabold, was incompetent to enter into a valid contract of marriage, because of the provisions of Section 1890-68, General Code (as in force in 1940, the year of the marriage). This section in part provided:

"Excepting a sane epileptic, or a patient upon voluntary admission, no patient in an institution as defined in section 22 of this act [Section 1890-22, General Code] or a patient on trial visit therefrom, shall be competent to enter into any agreement or execute a contract, deed or other instrument unless it has been approved and allowed by the court committing him

to the institution by an order entered on the journal of said court."

It is held generally in this country that the validity of a marriage is determined by the *lex loci contractus*. This rule generally includes as an integral part thereof the capacity of the parties to contract. *Courtright* v. *Courtright,* 11 Dec. Rep., 413, 26 W. L. B., 309, affirmed, *Courtright* v. *Scringem,* 53 Ohio St., 685, 44 N. E., 1134; *Peefer* v. *State,* 42 Ohio App., 276, 182 N. E., 117; 32 Ohio Jurisprudence, Private International Law, Section 62 *et seq.*

There are certain exceptions, however, to the general rule in respect to the capacity of the parties—to wit:

"Except as stated in Sections 131 and 132, a marriage is valid everywhere if the requirements of the marriage law of the state where the contract of marriage takes place are complied with.

"Comment:

\* \* \* \* \*

"e. \* \* \* the law of the state in which the marriage is celebrated, governs the validity of the marriage in regard to:

\* \* \* \* \*

"5. the capacity of the parties to enter into the contract of marriage."

Restatement of the Law, Conflict of Laws, 185, 186, Section 121.

The exception in Section 131, referred to in the above-quoted part of the Restatement of the Law, has no application to the instant case. However, Section 132 makes a marriage invalid, even though entered into in another state, if a statute in the domicile state makes such marriage void.

The question then arises: Does Section 1890-68, General Code, *supra,* or any other section of the stat-

utes of Ohio, make a marriage void by reason of the fact that one of the parties to the marriage agreement is under guardianship or is on trial leave from a mental institution established under authority of the state of Ohio?

In our search of the statutes, we find none. Certainly Section 1890-68, General Code, does not make such a marriage void. It does not attempt to give any extraterritorial operation to its provisions by a declaration that a marriage entered into in a sister state, in violation of its terms, shall be void. In the absence of an express prohibition, a marriage, even though in violation of the statutes of this state, is valid in this state if it was valid where contracted, unless it contravenes the declared public policy of this state as set forth in Section 131 of the Restatement of the Law, *supra*.

This conclusion brings us, then, to the next problem. Do the facts here presented justify a finding that the marriage was valid in Kentucky? Because, if it was invalid there, it is invalid in Ohio.

Section 2097 of the Kentucky statutes, in force in 1940, in part provided:

"Marriage is prohibited and declared void:

"1. With an idiot or lunatic."

This statute declares the rule of the common law, and its principles have been traditionally followed in Ohio in numerous cases, on the theory that "Marriage is a contract relation founded in the mutual consent of the parties; on which account consenting capacity is essential to its consummation. Consequently the want of such capacity, in either party, renders the relation meretricious, not matrimonial. Such is the immemorial and universal judgment of civilized society. * * * Hence, the marriage of parties, either of whom lacks the capacity to consent, is ineffectual and void *ab*

*initio.''* *Waymire, Gdn.,* v. *Jetmore,* 22 Ohio St., 271, at page 273. The state of Kentucky likewise shares with Ohio this view of the law of marriage.

If, however, a person who is mentally ill, fully comprehends the nature and consequences of his or her act in getting married, the marriage is valid.

"In determining whether one has mental capacity sufficient to contract a valid marriage, the test usually applied is whether there is a capacity to understand the nature of the contract and the duties and responsibilities which it creates." *Gellert* v. *Busman's Admr.,* 239 Ky., 328, at page 331, 39 S. W. (2d), 511.

It also appears in this decision of Kentucky's highest court that the marriage under consideration was held valid even though at the time of its commencement one of the parties was subject to an adjudication of insanity.

Although it is not important here for this decision, it is interesting to note that the rule in Ohio is the same.

"Guardianship, coupled with a decree of lunacy, is prima facie evidence of the incapacity of the ward to contract marriage, but such an adjudication is not conclusive, and guardianship does not of itself render the marriage contract void." 26 Ohio Jurisprudence, Marriage, Section 50.

Applying to the facts of this case the law of Kentucky as we find it to be, and the law of Ohio in so far as applicable, we do not find that the judgment of the Court of Common Pleas is contrary to law or is manifestly against the weight of the evidence. The trial court was empowered to weigh the conflicting evidence and the presumptions. That court was the trier of the facts. We find its judgment to be within the limits of its authority.

From a consideration of all of the other errors claimed, we find none to be of a prejudicial nature.

*Judgment affirmed.*

STEVENS, J., and HUNSICKER, J., concur.