DAILEY, APPELLANT, *v.* DAILEY, APPELLEE.

(No. 8147—Decided September 22, 1983.)

*Mr. Hugh R. Tankersley,* for appellant.

*Ms. Dorothy P. Dailey, pro se.*

BROGAN, P.J. This appeal arises from a judgment renderd by the Domestic Relations Division of the Court of Common Pleas of Montgomery County.

In September 1978, defendant-appellee, Dorothy P. Dailey, suffered a major stroke and was admitted to St. Elizabeth Hospital. Appellee was subsequently transferred to Beavercreek Nursing Home, Hilltop Nursing Home and is currently confined in Stillwater Health Center. She has not returned to the marital premises since suffering the stroke.

On June 28, 1982, plaintiff-appellant, Shirley George Dailey, filed an amended complaint seeking a divorce from appellee. Appellant's complaint alleges that he has a ground for divorce because appellant and appellee had, without interruption for two years, lived separate and apart without cohabitation. In a December 10, 1982 hearing, the trial court dismissed the foregoing action holding that appellant failed to establish

the grounds set forth in his complaint. Appellant's appeal arises from that judgment.

Appellant has set forth two assignments of error. Appellant's first assignment of error states:

"The trial court erred in dismissing plaintiff-appellant's suit for divorce, ruling that Ohio Revised Code Section 3105.01(K) requires intent of the parties to live separate and apart for two years."

R.C. 3105.01 reads, in pertinent part, as follows:

"The court of common pleas may grant divorces for the following causes:

"* * *

"(K) On the application of either party, when husband and wife have without interruption for two years, lived separate and apart without cohabitation, and four years in the case in which one of the parties is continually confined to a mental institution. A plea of res judicata or of recrimination with respect to any provision of this section does not bar either party from obtaining a divorce on this ground."

Appellant contends that the trial court erred by holding that the "living separate and apart without cohabitation" language of R.C. 3105.01(K) implies an intent to be separated on the part of at least one of the parties to the marriage. Appellant argues that a party has a ground for divorce when a husband and wife have lived separate and apart without cohabitation, and without interruption for two years, regardless of whether their separation is voluntary or involuntary. After reviewing the controlling legal authorities, the court must reject appellant's position.

It is generally accepted that before separation can be used as a ground for divorce, the separation must be voluntary. See Annotation (1971), 35 A.L.R. 3d 1238, 1248, Separation Within Statute Making Separation A Substantive Ground For Divorce, Section 4; 24 American Jurisprudence 2d (1983) 281, Divorce and Separation, Section 152. In the case at bar, appellant's and appellee's separation was clearly involuntary. Appellee suffered a stroke in September 1978 and was taken from the parties' residence to St. Elizabeth Hospital. Since that time, appellee has been unable to return to the marital premises and is presently confined to a nursing home. Consequently, the only reason the parties were unable to live together was because of appellee's physical disabilities.

Ohio's "living apart" statute is based upon the theory that living apart for a long period of time is the best evidence that a marriage has broken down. Norris, Divorce Reform: Ohio's Alternative to No Fault (1975), 48 State Govt. 52, 54. Here, the living apart is the result of defendant's illness rather than an indication that the marriage has broken apart.

Appellant continued to assume his marital duties, during his wife's confinement, and continued living in the marital premises for two years after his wife's confinement. Second, although he authorized appellee's daughter to remove *some* of her mother's clothing, a substantial amount of appellee's clothing remained at the marital premises. In addition, the parties' furniture remained at appellant's home, until it was either damaged by appellant's son or stolen by other relatives. Appellant also has possession of appellee's wedding ring. While the parties were living apart in a limited sense, they were not living separately in a marital sense. See *Bennington* v. *Bennington* (1978), 56 Ohio App. 2d 201 [10 O.O.3d 201]. Therefore, the court holds there is competent and credible evidence within the record to support the trial court's finding. Accordingly, appellant's first assignment of error is overruled.

Appellant's second assignment of error states:

"The trial court erred by refusing to appoint [a] guardian *ad litem* for defendant."

At trial, appellant made a motion,

seeking the trial court to appoint a guardian *ad litem* for appellee on the ground that appellee *may have been* incompetent. Appellant's rationale was that the appointment of a guardian *ad litem* would not constitute a finding of incompetence, but would merely serve to protect the parties if appellee was found to be incompetent after judgment had been rendered. The trial court rejected appellant's contention, holding that it lacked jurisdiction to appoint a guardian *ad litem* because the determination of an individual's competency lies within the exclusive jurisdiction of the probate court, pursuant to R.C. 2101.24.

R.C. 2111.02 reads, in pertinent part, as follows:

"*When found necessary, the probate court on its own motion or an application by any interested party shall appoint a guardian of the person, the estate, or both, of a minor, or incompetent,* provided the person for whom the guardian is to be appointed is a resident of the county or has a legal settlement therein and, except in the case of a minor, has had the opportunity to have the assistance of counsel in the proceeding for the appointment of such guardian.

"If a person is incompetent due to physical disability, the consent of the incompetent must first be obtained before the appointment of a guardian for him, and such person may select a guardian who shall be appointed if a suitable person." (Emphasis added.)

In addition, R.C. 2101.24 reads in pertinent part:

"Except as otherwise provided by law, the probate court has jurisdiction:

"* * *

"(D) To appoint and remove guardians and testamentary trustees, direct and control their conduct, and settle their accounts;

"* * *

"(F) To make inquests respecting persons who are unable to manage their property and affairs effectively for reasons such as mental illness, * * *;

"* * *

"Such jurisdiction shall be exclusive in the probate court unless otherwise provided by law."

The latest amendment to R.C. 2111.02 was effective October 25, 1961. Civ. R. 17(B), effective July 1, 1975, reads in pertinent part:

"* * * When a minor or incompetent person is not otherwise represented in an action the court shall appoint a guardian *ad litem* or make such other order as it deems proper for the protection of such minor or incompetent person."

Civ. R. 17(B) clearly authorizes a court other than the probate court to appoint a guardian *ad litem* for the protection of an individual the court believes to be incompetent. The probate courts do not possess exclusive jurisdiction in these matters. Appellant also does not have standing to object to the failure of the trial court to appoint a guardian *ad litem* for appellee.

Accordingly, the assignment of error is likewise overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KERNS and WEBER, JJ., concur.