MAHLE, APPELLEE, v. MAHLE, APPELLANT.

(No. 85AP-550—Decided November 21, 1985.)

*Joseph G. Rotondo* and *Richard E. Swope,* for appellee.

*Daniel J. Igoe* and *Mike Minnick,* for appellant.

NORRIS, J. Defendant, Margie E. Mahle, appeals from a judgment of the trial court granting a divorce to plaintiff, Jerome F. Mahle, Sr., upon proof satisfying the ground stated in R.C. 3105.01(K), the "living-apart" statute.

Defendant's answer raised the defenses of recrimination and condonation, and alleged that plaintiff was "estopped" from obtaining a divorce. Her counterclaim recited a prior entry of judgment in her favor in an alimony-only action, alleged the presence of grounds warranting an award of alimony, and sought an additional award of alimony to the extent that the sustenance alimony and health care coverage awarded her in the previous alimony-only judgment "will be reduced in the event of a divorce being granted to plaintiff."

At trial, plaintiff's evidence concerning the existence of the separation required by R.C. 3105.01(K) was uncontroverted, as was his evidence that all

property of the parties had been divided and distributed in the alimony-only action. Defendant's evidence indicated that she was receiving a "spousal benefit" of $502 per month, as the result of her being the spouse of a retiree under the Railroad Retirement Act; that this benefit was a combination of tier one benefits, which were analogous to those paid to social security retirees, tier two benefits, which were unique to the Railroad Retirement System and similar to a private pension, and annual cost-of-living allowances; that she would no longer be entitled to the tier two benefits if the parties were divorced; * * * █ and that, as a divorcee, she would lose the health care coverage she enjoyed as the spouse of a railroad retiree, * * *.

The trial court declined to permit the introduction by defendant of testimony concerning recrimination, condonation, or estoppel, for the reason that the evidence was irrelevant to the ground for divorce relied upon by plaintiff. The court did permit defendant to make a proffer of this evidence for the record, * * *.

In the judgment entry for alimony only, referred to by the trial court in its divorce decree, plaintiff was ordered to pay to defendant sustenance alimony of $150 per week, and to maintain medical insurance coverage for defendant "through his employment and/or retirement program." Subsequently, on September 8, 1983, an agreed judgment entry was filed which addressed sustenance alimony arrearages, and included this language:

"* * * [P]rovided defendant retires from employment, and provided defendant's Railroad Retirement enefits [sic] are approximately $1,000.00 per month, plaintiff will accept the spouse's portion of defendant's Railroad Retirment [sic] benefits in the approximate amount of $480.00 per month together with all available medical insurance benefits provided through defendant's employmer [sic] or union as and for sustenance alimony until further order of this court."

Defendant raises five assignments of error:

"I. The trial court erred in granting a divorce to the plaintiff-appellee on the grounds that the husband and wife had, without interruption for one year, lived separate and apart without cohabitation because the appellant established valid defenses to granting a divorce under Section 3105.01(K) R.C.

"II. The trial court erred by not applying the doctrine of collatoral [sic] estoppel as a bar to a divorce decree granted the appellee.

"III. The trial court erred in ignoring its duty as a court of equity to balance the equitable considerations between the parties.

"IV. The trial court erred in granting a divorce decree when said decree effectively modifies a previous alimony only decree.

"V. The trial court [erred] in refusing appellant any opportunity to produce testimony which would have defended against appellee's complaint."

Because the assignments of error are interrelated, we will combine them for purposes of discussion.

R.C. 3105.01 reads, in pertinent part, as follows:

"The court of common pleas may grant divorces for the following causes:

"* * *

"(K) On the application of either party, when husband and wife have, without interruption for one year, lived separate and apart without cohabitation.

"A plea of res judicata or of recrimination with respect to any provision of this section does not bar either

party from obtaining a divorce on this ground."

As relevant to our inquiry, R.C. 3105.10 reads as follows:

"(A) The court of common pleas shall hear any of the causes for divorce * * * charged in the complaint and may, upon proof to the satisfaction of the court, pronounce the marriage contract dissolved and both of the parties released from their obligations.

"* * *

"(C) A plea of condonation or recrimination is not a bar to a divorce."

Although defendant acknowledges the existence of the quoted language concerning condonation and recrimination, she contends that by adopting the statutes the General Assembly intended not to abolish those defenses, but, rather, to modify the common-law concept of their being an absolute bar to a divorce under all circumstances, so that a trial judge is now permitted to either ignore or utilize the defenses, depending upon the equities of each case.

Under the doctrine of recrimination, where the spouse seeking a divorce has been guilty of misconduct which is cause for divorce, that misconduct, when pleaded as an affirmative defense and proved, is a complete bar to divorce. *Sandrene* v. *Sandrene* (App. 1952), 67 Ohio Law Abs. 481. The rationale stated for the rule by Ohio courts was that divorce statutes were "intended for the relief of injured innocence; not to encourage persons of loose morals * * * to live in the open, scandalous violation of the common rules of decency. * * * The complainant must come with clean hands * * *, not stained with the same infamy and crime of which she complains. * * *" *Mattox* v. *Mattox* (1826), 2 Ohio 233, 233-234. Condonation was the voluntary forgiveness of a matrimonial offense by an aggrieved spouse, and its

effect was to prevent the wrong from being used later as a ground for divorce. *Wilson* v. *Wilson* (1968), 14 Ohio App. 2d 148, 153 [43 O.O.2d 340].

Without question, the General Assembly, in adopting R.C. 3105.10(B) (now R.C. 3105.10[C]) as part of the Divorce Reform Act of 1974 (Am. Sub. H.B. 233, effective Sept. 23, 1974 [135 Ohio Laws, Part II, 603, 613]), sought to abolish the common-law defenses of recrimination and condonation. Report of the Joint Committee on Domestic Relations to 109th General Assembly Pursuant to H.J.R. No. 38 of the 108th General Assembly; see, *e.g.*, Note, The Ohio Divorce Reforms of 1974 (1975), 25 Case W. Res. L. Rev. 844; Comment and Note, The Ohio Divorce Reform Act: Half-Stepping to the Modern Drummer (1975), 2 Ohio Northern Univ. L. Rev. 508; Sheldon, From Commandments to Consent: Ohio in the Divorce Reform Era (1974-1975), 2 Northern Ky. St. L. Forum 119. In addition, by enacting the living-apart statute (R.C. 3105.01[K], 135 Ohio Laws, Part II, 281), the General Assembly adopted a "no-fault" divorce remedy, against which traditional fault-oriented defenses are not available. *Cassaro* v. *Cassaro* (1976), 50 Ohio App. 2d 368, at 370-371 [4 O.O.3d 320]; Banks-Baldwin, Ohio Domestic Relations Law (1984), Section 23.02, at 237. The statute is grounded upon the public policy that living apart for a long period of time is the best evidence that a marriage has broken down, and that a divorce should be available under these circumstances without reference to marital misconduct on the part of either spouse. See *Dailey* v. *Dailey* (1983), 11 Ohio App. 3d 121, at 122.

Accordingly, the trial court did not err in excluding evidence relevant solely to proof of common-law defenses to divorce. * * *

Defendant contends that the trial court had discretionary power to deny

plaintiff a divorce, and should have done so as the result of balancing "equitable considerations between the parties." By this, defendant apparently means that, since plaintiff had in the past not paid sustenance alimony as ordered and, as a result of his default, she agreed to a lesser amount of alimony so long as it was paid from his pension, and a divorce would cut her off from this certain source of payment, it was inequitable to grant plaintiff a divorce. Plaintiff should be estopped from obtaining a divorce, she argues, since he agreed to the arrangement for paying sustenance alimony, and because a divorce would result "in an automatic modification of the agreement." However, in view of the public policy underlying the General Assembly's adoption of the living-apart statute, we are unable to say that the trial court abused its discretion in permitting the termination of a marriage relationship which, according to the uncontroverted evidence, conformed to the statutory definition of a marriage which has broken down irretrievably.

\* \* \*

The first, second, third, and fifth assignments of error are overruled; the fourth assignment of error is sustained in part and overruled in part. The judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part, and*
*cause remanded.*

WHITESIDE and MITROVICH, JJ., concur.

MITROVICH, J., of the Court of Common Pleas of Lake County, sitting by assignment in the Tenth Appellate District.