[Cite as *McMillan v. McMillan*, 2021-Ohio-698.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JAMES B. MCMILLAN,                    :

    Plaintiff-Appellee,          :

                                No. 109048

    v.                                  :

TONYA MCMILLAN,                      :

    Defendant-Appellant.         :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 11, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-17-366162

***Appearances:***

Lester S. Potash, *for appellee.*

Oscar Trivers, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant, Tonya McMillan ("Appellant"), appeals from a judgment of the Cuyahoga County Court of Common Pleas, Division of Domestic Relations ("domestic relations court"), that granted a divorce, terminating her

marriage with James B. McMillan ("Mr. McMillan").  For the reasons that follow, we affirm.

## I.   BACKGROUND

{¶ 2}   Appellant and Mr. McMillan were married on February 14, 2004.  No children were born as issue of the marriage.

{¶ 3}   Mr. McMillan left the marital home and moved in with his biological daughter, appellee Arizinnia Hood ("Ms. Hood") in February 2017.  He did not live at the marital home after that date.  On March 10, 2017, Appellant applied to be appointed Mr. McMillan's guardian, alleging he was incompetent.  Ms. Hood later applied to be appointed his guardian in the same probate court case.  Mr. McMillan, through counsel, filed a complaint for divorce in the domestic relations court on March 14, 2017, on grounds of gross neglect of duty and incompatibility.  Appellant filed an answer denying the allegations and asserting that Mr. McMillan lacked the mental capacity to file a divorce action.

{¶ 4}   On June 23, 2017, the Cuyahoga County Common Pleas Court, Probate Division ("probate court"), issued Letters of Guardianship to Ms. Hood, appointing her guardian of the person and estate of Mr. McMillan.[1]  The issuance of the guardianship was based upon a magistrate's recommendation, which the probate court adopted and which the domestic relations court later incorporated by

---

[1] Ms. Hood was not formally substituted as the plaintiff in the divorce proceedings below, but was added as a defendant and has been substituted as the appellee in this appeal pursuant to App.R. 29(B) because of her status as Mr. McMillan's guardian.

reference in its own ruling granting the divorce. Although Appellant had originally applied to be Mr. McMillan's guardian, the court appointed Ms. Hood based on the irreconcilable conflict between Mr. McMillan and Appellant that the divorce proceedings presented and because Mr. McMillan informed the probate court that he preferred his daughter, Ms. Hood, to be his guardian. After being appointed guardian, Ms. Hood had Mr. McMillan moved to an assisted living facility around July 2017.

{¶ 5} In the divorce action, Appellant moved on December 22, 2017, for the court to determine whether Mr. McMillan was competent to divorce or competent to voluntarily dismiss the divorce proceedings. She claimed Mr. McMillan did not desire to divorce her and submitted an affidavit signed by Mr. McMillan stating the same. The affidavit suffers from some discrepancies. It incorrectly states the date of the marriage and states that Ms. Hood retained counsel on May 2, 2017, to file the divorce action even though the divorce complaint was filed on March 14, 2017. The court stayed the divorce action until the probate court determined Mr. McMillan's competency to decide whether he wanted the divorce to go forward.

{¶ 6} In May 2018, Appellant moved the probate court to determine if Mr. McMillan was competent to divorce or competent to voluntarily dismiss the divorce proceedings.[2] The probate court denied the motion in October 2018. The public

---

[2]Although the probate court record is not before us, with the exception of the findings incorporated by the domestic relations court, the "Ohio Supreme Court has held that a court may take judicial notice of a docket that is publicly available via the internet." *Lundeen v. Turner*, 8th Dist. Cuyahoga No. 109240, 2020-Ohio-274, ¶ 4, fn. 1, citing *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516; *State*

docket states that the probate court's previous finding that Mr. McMillan was incompetent remained in effect.

{¶ 7} Mr. McMillan's complaint for divorce proceeded to trial in the domestic relations court on December 3, 2018, and February 4, 2019. Ms. Hood and Appellant testified at trial. Ms. Hood testified that Mr. McMillan filed for divorce on his own and with no input from her. She testified that Mr. McMillan had filed for divorce twice before, but dismissed those actions. Appellant testified that Mr. McMillan had filed for divorce only once before, and she claimed he did not want to pursue this current action. Both Ms. Hood and Appellant testified that Mr. McMillan had lived outside the marital home for more than one year, but Appellant disputed that Mr. McMillan had voluntarily left the marital home.

{¶ 8} Both Ms. Hood and Appellant also testified as to an incident that occurred around June 2017, where Mr. McMillan left Ms. Hood's home and later appeared at the marital home. Ms. Hood testified that Mr. McMillan wandered away from her home and got lost. Appellant testified that Mr. McMillan deliberately left Ms. Hood's home to return to the marital home. Neither party attempted to call Mr. McMillan to testify. After this incident, he only resided at the hospital and assisted living and did not return to the marital home again.

{¶ 9} The magistrate's recommendation thoroughly considered all the testimony and evidence presented at trial. The magistrate acknowledged that there

---

*v. Chairperson of the Ohio Adult Parole Auth.*, 2018-Ohio-1620, 96 N.E.3d 303 (10th Dist). We take judicial notice of the probate court proceedings to the extent they are publicly available via the internet.

was no evidence of incompatibility or gross neglect of duty, as alleged in Mr. McMillan's complaint. The magistrate did find evidence, however, that the couple voluntarily lived separate and apart for more than one year, which is grounds for divorce under R.C. 3105.01(J). Although Appellant testified the separation was not voluntary, the magistrate found Ms. Hood's testimony to be more credible on that issue. The magistrate recommended that the complaint for divorce be amended pursuant to Civ.R. 15(B) to conform to the evidence. The magistrate also issued recommendations regarding spousal support and the division of marital property and debt, which are not on appeal.

{¶ 10} The magistrate also incorporated in full the probate court's decision finding Mr. McMillan to be incompetent and appointing Ms. Hood guardian. In the incorporated decision, the probate court found, by clear and convincing evidence, that Mr. McMillan had been diagnosed with vascular and Alzheimer's dementia after suffering a stroke, suffered from suffered from cognitive deficits in language and memory, and was incompetent.

{¶ 11} The probate court's decision included medical evidence confirming the diagnosis. The probate court found that a doctor at Partners for Behavioral Health and Wellness, Inc., reported on Mr. McMillan's competency and concluded that he had "diminished insight into his situation, ability to care for himself and his needs" and that he requires assistance with his medications. The court also found that a second report from University Hospitals concluded that Mr. McMillan

suffered from "cognitive deficits in memory, executive functioning, and to a lesser degree language."

{¶ 12} Appellant filed objections to the magistrate's recommendation. She argued that the parties' separation was involuntary and also took issue with the recommendations regarding the division of marital property and debt and her request for spousal support. Appellant did not object to the magistrate incorporating the probate court's findings regarding Mr. McMillan's competency.

{¶ 13} The court acknowledged each of Appellant's objections, but noted that the objections did not cite any legal authorities or portions of the transcript in support. It further concluded that the evidence supported that the parties voluntarily lived separate and apart, in excess of one year. Accordingly, the court overruled the objections and adopted the magistrate's recommendation in full. In a separate judgment entry, the court entered a final decree of divorce dated August 27, 2019.

{¶ 14} On September 10, 2019, Appellant filed a motion for relief from judgment under Civ.R. 60(B). Appellant filed this appeal a few days later and the domestic relations court has not ruled on the motion. Attached to the motion is a copy of a report of a doctor of psychology, who interviewed Mr. McMillan on May 29, 2019, months after the divorce trial had concluded.

{¶ 15} The report took place at the nursing home where Mr. McMillan lives. The examiner reported that Mr. McMillan was "neatly dressed," "personable, cooperative and likeable[,]" and that his room was "neat and clean." The examiner

also observed that Mr. McMillan "had some difficulty with remembering details of his history" and "also left out obviously important details of some of his chronology, but was able to supply same upon further questioning or probing for clarification." The examiner also found evidence of "delusional thinking and paranoia." He concluded that "there is no psychological justification for this man to be held involuntarily in a nursing home," but also noted that Mr. McMillan would require assistance with his finances and taking medications if he did not continue living at the nursing home.

{¶ 16} In December 2019, after the domestic relations court had issued its final decree of divorce, the probate court docket reflects that Appellant moved the probate court for an order allowing for a new medical examination of Mr. McMillan to determine if he had been restored to competency. The probate court granted the motion, but the magistrate ultimately recommended upholding the guardianship. The probate court adopted that recommendation in a judgment entry dated October 1, 2019.

{¶ 17} Appellant now appeals the decree of divorce and raises two assignments of error:

Assignment of Error No. 1

The trial court erred by granting a divorce when the plaintiff was not given the opportunity to testify, even though there was clear evidence that he was competent to testify.

Assignment of Error No. 2

The granting of the divorce based on the sole testimony of a guardian is contrary to law.

## II. DISCUSSION

### A. Standard of Review

{¶ 18} This appeal requires us to review the granting of a divorce decree. "When reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard." *Katz v. Katz*, 8th Dist. Cuyahoga No. 103715, 2017-Ohio-4290, ¶ 14, quoting *Gray v. Gray*, 8th Dist. Cuyahoga No. 95532, 2011-Ohio-4091, ¶ 7, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). "An 'abuse of discretion' connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} Trial courts "'have discretion to do what is equitable upon the facts and circumstances of each case.'" *Katz* at ¶ 14, quoting *Gray* at ¶ 7, quoting *Booth* at ¶ 144. We "are not free to merely substitute [our] judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1990). Thus, we must affirm the decision of the trial court where the decision is "supported by some competent, credible evidence going to all the essential elements of the case." *Katz* at ¶ 14, quoting *Gray* at ¶ 7, citing *Masitto v. Masitto*, 22 Ohio St.3d 63, 66, 488 N.E.2d 857 (1986).

### B. The Trial Court Did Not Abuse Its Discretion

{¶ 20} Appellant argues in her first assignment of error that the trial court erred in granting the divorce without giving Mr. McMillan the opportunity to testify

where there was clear evidence that he was competent to testify. In her second assignment of error, Appellant argues that the trial court erred in granting a divorce based on the sole testimony of Ms. Hood. Appellant's sole authority for both assertions is *Boyd v. Edwards*, 4 Ohio App. 3d 142, 446 N.E.2d 1151 (8th Dist.1982).

{¶ 21} In *Boyd*, the trial court granted a divorce that was filed by the guardian of the husband, who had been declared incompetent nearly ten years before the court proceedings, after suffering an automobile accident. This court reversed. We held that the trial court erred in failing to determine whether the husband was competent to testify about his wishes regarding the dissolution of his marriage where the guardian — not the husband — filed the complaint and testified that the husband could read, write, talk, and express his feelings. *Boyd* at 150. This case is different from *Boyd*.

{¶ 22} In *Boyd*, the guardian filed for divorce on behalf of the husband. Here, the evidence supports that Mr. McMillan filed for divorce himself in March 2017 and was not declared incompetent until several months later in June 2017. Although Appellant testified that Mr. McMillan did not file for divorce or was coerced by Ms. Hood into filing for divorce, Ms. Hood testified that she did not file the divorce action. Thus, *Boyd* is distinguishable from the instant case based on the key difference that evidence supports Mr. McMillan himself filed the divorce complaint before the probate court declared him incompetent.

{¶ 23} In addition, in *Boyd* the trial court "thwarted any attempt by [wife] to introduce evidence that her husband did not in fact want the divorce his guardian

was seeking." *Boyd* at 144. Yet the guardian in *Boyd* testified that the ward could still write, talk, and express his feelings. *Boyd*, 4 Ohio App. 3d 142, 147, 446 N.E.2d 1151 (8th Dist.1982). Here, Ms. Hood testified that Mr. McMillan had been diagnosed with dementia and was often delusional and confused. She also testified that at some point it "was hard to hold a normal conversation" with Mr. McMillan. (Tr. 35.) Although Appellant later submitted a postjudgment psychologist's report that Mr. McMillan was well-dressed, maintained a clean room, and was able to carry on a conversation, the report concerns an issue that was not before the domestic relations court and is not before this court on appeal. Namely, whether Mr. McMillan should be subject to a guardianship.

{¶ 24} As to Appellant's first assignment of error, we do not find that the trial court abused its discretion in granting a divorce without hearing Mr. McMillan testify or independently determining his competency to testify. "'The appointment of a guardian for a mentally incompetent person will not abate a divorce action instituted prior to the incompetency.'" *Bakhtiar v. Saghafi*, 2016-Ohio-8052, 75 N.E.3d 801, ¶ 13 (8th Dist.), quoting *State ex rel. Broer v. Alexander*, 175 Ohio St. 24, 190 N.E.2d 923 (1963), paragraph one of the syllabus. Thus, *Boyd* does not control here because Mr. McMillan himself, through counsel, filed for divorce. In addition, Appellant was provided an opportunity at trial to either have Mr. McMillan testify and/or provide testimony regarding his wishes, unlike in *Boyd*.

{¶ 25} The concern in *Boyd* that the husband may not have wanted a divorce and that the guardian was merely pursuing her own interests rather than the ward's

is not controlling here. Although Appellant claimed that Ms. Hood filed the complaint or induced Mr. McMillan to file the complaint, Ms. Hood testified that she did not file the divorce action. Further, both Appellant and Ms. Hood testified that Mr. McMillan had filed for divorce from Appellant at least once before. We cannot find that the trial court abused its discretion in finding Ms. Hood's testimony that she did not file the divorce action to be more credible.

{¶ 26} Appellant's first assignment of error is overruled.

{¶ 27} As to Appellant's second assignment of error, there is no indication that the trial court's decision was based on the sole testimony of Ms. Hood. The magistrate's recommendation, which the court adopted, thoroughly reviewed all the evidence presented at trial and came to reasonable conclusions supported by the evidence.

{¶ 28} Appellant's second assignment of error is overruled.

## C. Discussion of Appellant's Issues

{¶ 29} Appellant has also identified three issues in connection with her assignments of error. We will briefly address each. Appellant's first stated issue asks whether Ms. Hood had the right to file a complaint for divorce on behalf of Mr. McMillan. This misstates the facts. Other than Appellant's assertions, there was no evidence presented to support that Ms. Hood filed the divorce complaint herself or coerced Mr. McMillan to do so. As discussed, Ms. Hood denied filing the complaint.

{¶ 30} Appellant's second issue asks whether Ms. Hood proved legitimate grounds for divorce. We find that she did. Although Mr. McMillan asserted gross

neglect of duty and incompatibility as grounds for divorce, the trial court granted a divorce under R.C. 3105.01(J) on the grounds that the former couple voluntarily lived separate and apart for more than one year. When Mr. McMillan filed for divorce, he had not lived separately from Appellant for more than one year and could not have alleged that basis for divorce in his complaint. However, the evidence at trial established that Mr. McMillan and Appellant had since lived apart for more than one year. The magistrate recommended that the complaint be amended to conform to the evidence pursuant to Civ.R. 15, which provides, in part, that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * * Failure to amend as provided herein does not affect the result of the trial of these issues."

{¶ 31} Here, neither party moved to amend their pleadings under Civ.R. 15, but nothing in the record suggests that either party objected to trying that issue. Absent such a challenge, "the trial court reasonably could infer that the parties impliedly consented to have the court try the issue." *Galloway v. Khan*, 10th Dist. Franklin No. 06AP-140, 2006-Ohio-6637, ¶ 72-75, citing *Brooks-Lee v. Lee*, Franklin No. 03AP-1149, 2005-Ohio-2288, at ¶ 58; *Moser v. Moser*, 5 Ohio App.3d 193, 194, 450 N.E.2d 741 (9th Dist.1982). It is undisputed that Mr. McMillan lived outside the marital home for more than one year. Ms. Hood testified that the separation was voluntary and the magistrate believed her to be credible. Since no party objected to trying the issue and the evidence supports that the parties

voluntarily lived separate and apart for more than one year, we cannot find that the trial court abused its discretion in finding grounds for divorce under R.C. 3105.01(J).

**{¶ 32}** Appellant's third issue asks whether Mr. McMillan has the right to oppose the divorce "even though he has a Guardian and is not mentally incapacitated as such." Once again, other than Appellant's unsupported assertions, there was no evidence presented at trial that Mr. McMillan opposed the divorce or that he has the mental capacity to oppose the divorce after the probate court declared him incompetent and in need of a guardian. Appellant is presumably referring to filings submitted by an attorney claiming to be Mr. McMillan's attorney and friend. As the trial court noted, this attorney never filed a notice of appearance and was therefore not recognized as Mr. McMillan's attorney.

**{¶ 33}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
MARY J. BOYLE, A.J., DISSENTS


MARY J. BOYLE, A.J., DISSENTING:

{¶ 34} I respectfully dissent. I would sustain both of defendant-appellant, Tonya McMillan's ("wife"), assignments of error. It is my view that the trial court abused its discretion when it overruled wife's objections and adopted the magistrate's decision because the magistrate failed to determine whether plaintiff-appellee, James McMillan ("husband"), was competent to testify regarding his intent to divorce wife. It is also my view that the trial court abused its discretion when it granted the divorce on the ground that the parties have voluntarily lived separate and apart without cohabitation for over one year pursuant to R.C. 3105.01(J) because there was no competent credible evidence in the record to support this finding. Accordingly, I would vacate the trial court's judgment issuing the final divorce decree.

{¶ 35} In her opening statement to the court, wife's counsel stated that the evidence would show:

> [H]usband absolutely does not want this divorce. He told that to several, several people. He has written it down. He has expressed it to every one [sic] including his guardian. He has expressed it to me. He

has left me several messages on my voicemail at work, even as recently as this morning pleading with me to do whatever I can to not let this divorce go through. He wants to reunite with his wife. * * * And he has expressed to everyone at this table, and everyone involved that he does not want to divorce his wife.

{¶ 36} The magistrate dismissed wife's counsel's statements and said, "But you understand again that's an issue for the Probate Court."

{¶ 37} It is my view that the magistrate should have determined whether husband was competent to testify regarding his intentions. Ohio courts have "a duty to assure" themselves that the complainant "'*in fact* wanted a divorce, [because] the public policy of Ohio and its sister states favors the preservation of the marriage bond.'" *Boyd v. Edwards*, 4 Ohio App.3d 142, 146, 446 N.E.2d 1115 (8th Dist.1982) (emphasis sic), quoting *Van DeRyt v. Van DeRyt*, 6 Ohio St.2d 31, 40, 215 N.E.2d 698 (1966).

{¶ 38} Wife relies on *Boyd* in support of her argument that the trial court should have questioned husband to determine his intentions with respect to the divorce. I agree. In *Boyd*, the husband's sister and guardian filed a divorce complaint against the wife under former R.C. 3105.01(K), which at that time stated in relevant part that a court of common pleas may grant a divorce "[o]n the application of either party, when husband and wife have, without interruption for two years, lived separate and apart without cohabitation[.]" Wife argued to the trial court that it should not grant the divorce because husband did not want the divorce and was not able to express "the intent necessary to sue for divorce." *Id.* at 142. The trial court, however, awarded husband "the divorce as prayed for, upon a finding

that the parties had been living apart 'for more than two years, to-wit, from 1971 to (the present).'" *Id.*

{¶ 39} This court stated in *Boyd*:

> In the context of marriage, an adjudication of incompetency prior to marriage is not necessarily conclusive proof of the person's incapacity to enter a valid marriage. According to *Seabold v. Seabold*[, 84 Ohio App. 83, 84 N.E.2d 521 (9th Dist.1948)], a mentally ill person who has an appointed guardian can still enter into a valid marriage, provided he or she "fully comprehends the nature and consequences of his or her act in getting married." *Id.* at 88.

*Id.* at 148.

{¶ 40} We reviewed Evid.R. 601, which sets forth when a witness is competent to testify. *Boyd*, 4 Ohio App.3d at 147, 446 N.E.2d 1115. At that time, Evid.R. 601 stated that "[e]very person is competent to testify except: (a) Those of unsound mind, and children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly[.]"

{¶ 41} We explained that the "governing principle" of "persons of unsound mind" testifying was that "'[a] person who is able to correctly state matters which have come within his perception, with respect to the issues involved, and [who] appreciates and understands the nature and obligation of an oath is a competent witness, notwithstanding some unsoundness of mind.'" *Id.*, quoting *State v. Wildman*, 145 Ohio St. 379, 386, 61 N.E.2d 790 (1945).

**{¶ 42}** We reviewed *Dozer v. Dozer*, 8 Ohio Law Abs. 507 (4th Dist.1930), where the court addressed "the issue of an incompetent's ability to marry." *Boyd* at 148. The *Dozer* court stated:

> "While it is true that [the wife] Electa King Dozer was at the time of the marriage under a guardianship yet from the testimony and from the evidence she gave it is evident that she fully understood what she was doing and had sufficient mental capacity to enter into the marriage relation. The mere fact that she was under a guardianship would not render the marriage contract void. The degree of mental capacity required to enter into a valid marriage is laid down in 18 R.C.L. as follows:
>
> "'Therefore, it is not every unsoundness of mind that will make void a marriage contract, and if a person entering into the marriage relation has sufficient capacity to understand the nature of the contract and the duties and responsibilities which it creates the marriage will be valid.'" (Emphasis [sic.])

*Boyd* at 148, quoting *Dozer* at 507. We further explained that "[s]imilarly, a testator who has been adjudicated incompetent but has intervals of lucidity may still be capable of making a valid will." *Id.*

**{¶ 43}** Although in *Boyd*, 4 Ohio App.3d 142, 446 N.E.2d 1115, we did not find an Ohio case on point, we "note[d] with approval" the holdings from several other states:

> *In re Marriage of Higgason* (1973), 10 Cal. 3d 476, 110 Cal. Rptr. 897, 516 P.2d 289, where a guardian ad litem brought a divorce action on behalf of a wife, and the Supreme Court of California held that the guardian was the representative, not the party to the action, and that the trial court properly found that the wife, although adjudged incompetent, was in fact not insane, but was capable of exercising judgment and had clearly expressed her desire that the marriage be dissolved. *See, also, Spooner v. Spooner* (1918), 148 Ga. 612, 97 S.E. 670 (plaintiff-wife, although weak in mind had sufficient capacity to maintain a divorce action); *Akin v. Akin* (1926), 163 Ga. 18, 135 S.E. 402 (trial judge found that plaintiff, on furlough from a mental

institution, had sufficient capacity to sue for a divorce on her own behalf); *Stevens v. Stevens* (1934), 266 Mich. 446, 254 N.W. 162 (wife substituted as plaintiff in a suit originally brought by her guardian, where the court was satisfied that she had the mental capacity to understand the nature of the divorce proceedings); and *Turner v. Bell* (Tenn. 1955), 279 S.W. 2d 71 (upholding a divorce awarded by the trial court to a plaintiff-wife previously adjudged incompetent upon a finding that she had the requisite volition to seek a divorce and the capacity to testify and maintain the action).

{¶ 44} After reviewing the relevant case law and evidentiary rules, we concluded in *Boyd*:

> Where a guardian sues for divorce on behalf of her ward who has previously been adjudged incompetent, and the suit is opposed by the ward's spouse on the ground that the ward does not want a divorce, and there is testimony that the ward can communicate and express his feelings, the court may not grant a divorce under [former R.C. 3105.01(J)] without first determining if the ward is competent to testify.

*Id.* at paragraph one of the syllabus.

{¶ 45} The majority finds *Boyd*, 4 Ohio App.3d 142, 146, 446 N.E.2d 1115, to be distinguishable because husband, not his guardian, filed the divorce complaint before the probate court declared him incompetent. I disagree that this fact makes *Boyd* distinguishable. Indeed, it is my view that fact is irrelevant. We explained in *Boyd*:

> [N]otwithstanding uncontroverted evidence that the parties have lived apart without cohabitation for over ten years (since 1971), there still may be reasons why the parties have been unable to live together which would warrant continuing the marriage.
>
> Not every physical separation is automatically grounds for dissolving a marriage. There may be special circumstances — outside one or both of the parties' control, for that matter — which explain why the parties have been living apart, and which do not warrant the conclusion that the marriage should be dissolved. This is particularly true where, as in

the instant case, the defendant wife has opposed the divorce and has attempted to show that the physical separation has been coerced or imposed rather than voluntarily maintained, and where appellee-guardian has presented no evidence as to the current wishes of the husband[.]

*Id.* at 149.

{¶ 46} Evid.R. 601 now states in relevant part:

(B) A person is disqualified to testify as a witness when a court determines that the person is:

(1) Incapable of expressing himself or herself concerning the matter as to be understood, either directly or through interpretation by one who can understand him or her; or

(2) Incapable of understanding the duty of a witness to tell the truth.

{¶ 47} Relying on Evid.R. 601, the court in *Banez v. Banez*, 5th Dist. Stark No. 2006CA00216, 2007- Ohio-4584, explained that the appointment of a guardian for an incompetent person "does not automatically render the witness incompetent to testify if he or she has sufficient understanding to comprehend the obligation of an oath and is capable of giving a correct account of the matters seen or heard in reference to questions at issue, notwithstanding some unsoundness of mind." *Id.* at ¶ 21, citing *State v. Bradley*, 42 Ohio St.3d 136, 140, 538 N.E.2d 373 (1989), and *Wildman*, 145 Ohio St. 379, 386, 61 N.E.2d 790. "Indeed, some unsoundness of mind does not render a witness incompetent if the witness otherwise possesses the three basic abilities required for competency: the ability to accurately observe, recollect, and communicate that which goes on around him or her." *Id.*, citing *Wildman* at 379.

{¶ 48} In *Banez*, the wife filed a complaint for divorce in April 2004. In July 2005, the wife was diagnosed with Alzheimer's disease of moderate severity and the probate court declared her incompetent. Although the husband petitioned to be the wife's guardian, the probate court appointed her daughter to be guardian of her person and an attorney to be guardian of her estate. Although the wife had been declared incompetent, the trial court questioned wife to determine if she was competent to testify regarding her intentions. After questioning wife, the trial court found that "[d]espite the [probate court's] adjudication of incompetency, the [c]ourt finds that, on the day of her testimony, she was lucid and competent to testify and express her desire with regard to the divorce proceedings." *Id.* at ¶ 177. Based on the wife's testimony, the trial court concluded that she had "been voluntarily living separate and apart from [h]usband for more than one year." *Id.*

{¶ 49} In this case, the record contains husband's June 2017 affidavit in which he states that his daughter, Arizinnia Hood, held him "under lock and key," and that he loves wife and does not want to divorce her. The record also shows that in October 2018, husband, through counsel, moved to dismiss his divorce complaint, stating that he "want[s] to go home to [his] wife."

{¶ 50} Moreover, wife has consistently opposed this action on the ground that husband does not want a divorce. At trial, wife testified that she and husband love each other and that she knows he does not want to divorce her. Wife's counsel also told the magistrate in opening statements that husband has expressed to

everyone involved in the case, as recently as the morning before trial, that he "absolutely does not want this divorce."

{¶ 51} Although there was evidence in the record that husband no longer wanted to divorce wife, the magistrate prevented the parties from introducing evidence of husband's intent because that was "an issue for the probate court." In doing so, the magistrate improperly relied on *Bakhtiar v. Saghafi*, 8th Dist. Cuyahoga No. 104204, 2016-Ohio-8052, in which this court found that the trial court acted within its discretion when it did not determine whether the wife, who the probate court previously declared incompetent, still wanted a divorce at the time of trial. *Id.* at ¶ 8. It is my view, however, that the present case is distinguishable from *Bakhtiar*. First, the appellant in *Bakhtiar* did not provide this court with a transcript on appeal. We explained that "[o]ur ability to review [the appellant's] assignments of error relating to [the appellee's] mental capacity to request a divorce is limited because we have no transcript of the trial." *Id.* at ¶ 2. Moreover, because we did not have a transcript, we had to presume regularity. *Id.* at ¶ 3.

{¶ 52} Further, unlike the wife in *Bakhtiar*, where "[t]here [was] no indication * * * that [wife] did not want a divorce, even after being declared incompetent," that is not the case here. *Id.* at ¶ 13. In this case, there is an indication in the record that husband no longer wished to divorce wife. It is therefore my view that the trial court abused its discretion when it overruled wife's objection and adopted the magistrate's recommendation to grant the divorce without first

determining whether husband was competent to testify regarding his intent to divorce wife.

{¶ 53} It is also my view that the trial court abused its discretion when it adopted the magistrate's decision to grant a divorce based upon the parties living separate and apart without cohabitation for one year under R.C. 3105.01(J).

{¶ 54} R.C. 3105.01(J) is "'grounded upon the public policy that living apart for a long period of time is the best evidence that a marriage has broken down, and that a divorce should be available under these circumstances[.]'" *Harding v. Harding*, 8th Dist. Cuyahoga No. 85022, 2005-Ohio-3010, ¶ 16, quoting *Mahle v. Mahle*, 27 Ohio App.3d 326, 328, 500 N.E.2d 907 (10th Dist.1985). Therefore, "'before separation can be used as a ground for divorce, the separation must be voluntary.'" *Collins v. Collins*, 8th Dist. Cuyahoga No. 91761, 2009-Ohio-5687, ¶ 8, quoting *Dailey v. Dailey*, 11 Ohio App.3d 121, 122, 463 N.E.2d 427 (2d Dist.1983). A "trial court's determination whether the parties voluntarily live separate and apart is a determination of fact. Such a determination will not be reversed if there is competent, credible evidence in the record to support it." *Id.*

{¶ 55} In *Daily*, the court did not grant the parties a divorce based upon the fact that they had lived separate and apart for more than two years (as the statute required at that time) because wife had been living in a nursing home since having a stroke. The court in *Daily* explained, "Ohio's 'living apart' statute is based upon the theory that living apart for a long period of time is the best evidence that a marriage has broken down." *Id.* at 122. The court found that the separation was not

voluntary because the parties' "living apart [was] the result of [the wife's] illness rather than an indication that the marriage had broken apart." *Id.*

{¶ 56} Here, the trial court adopted the magistrate's decision to grant a divorce based upon R.C. 3105.01(J) after finding that there was evidence presented at trial that the parties had lived separate and apart without cohabitation for more than a year. Although husband did not plead that as a ground for divorce, the magistrate recommended the parties amend the pleadings "be amended to conform with the evidence." The trial court overruled wife's objections on this point, finding that there was evidence in the record that the parties had lived separate and apart for over one year because husband voluntarily went to live with his daughter in February 2017 "before his health required admission to an assisted living facility." The trial court, relying on *Collins* and *Heskett v. Heskett*, 2d Dist. Champaign No. 91-CA-05, 1991 Ohio App. LEXIS 5816 (Nov. 25, 1991), concluded that because of this, "the whole period of separation [was] deemed voluntary."

{¶ 57} It is my view that *Collins*, 8th Dist. Cuyahoga No. 91761, 2009-Ohio-5687, and *Heskett* do not support the trial court's finding in this case that husband lived apart from wife voluntarily. In *Collins*, this court found that the wife voluntarily chose to live separate and apart from her husband when he was admitted into a nursing home because she had the opportunity to live with him there but chose not to. *Id.* at ¶ 9. Here, appellant testified that she was not permitted to visit husband in his assisted living facility, let alone live there with him.

{¶ 58} In *Heskett*, the husband filed a counterclaim for divorce and moved out of the marital home before he suffered a stroke. After the stroke, he was admitted into a nursing home and declared incompetent. *Heskett* at ¶ 2. The Second District found that the husband lived apart from the wife voluntarily because "[t]here was substantial evidence that the parties' marriage had broken down." *Id.* at ¶ 6. Here, the record does not contain substantial evidence that the parties' marriage had broken down before Hood placed husband into an assisted living facility.

{¶ 59} It is undisputed that when husband first left the marital home to go to the hospital in December 2016, both wife and Hood took him to the hospital together. However, wife and Hood gave conflicting testimony regarding whether husband left the marital home voluntarily after he was discharged from the hospital in February 2017. Hood testified that when husband was discharged from the hospital, he wanted Hood to pick him up from the marital residence, and he wanted to live with Hood. Wife, however, testified that one hour after she brought husband to the marital residence when he was released from the hospital, Hood arrived and "kidnapped" him. Wife said that husband told her that he was going to go talk to Hood and he would "be right back," but Hood "speed[ed]" away with him and did not bring him back.

{¶ 60} Wife and Hood also gave conflicting testimony as to whether husband continued to voluntarily live apart from wife after February 2017. Hood testified that in June 2017, when husband returned to the marital residence, he "got lost,"

and "somebody drove him to" the marital residence.  But wife testified that in June 2017, husband "ran away" from Hood's house and walked to the marital residence.  Wife testified that husband told her that Hood was "drugging him," that he did not want to live with Hood anymore, and that "she made him stay there."  Wife further testified that husband told her that Hood's son is a bodyguard and prevented him from leaving Hood's house.  Wife said that husband tried to escape twice before, but Hood and her son "got him and brought him back."

{¶ 61} It is my view that the trial court erred when it deferred to the magistrate's credibility determination that Hood was more credible and found that this evidence established that husband had lived apart from wife voluntarily for more than one year.  The trial court relied on *Calanni v. Stowers*, 8th Dist. Cuyahoga No. 106618, 2018-Ohio-4025, in support of its authority to defer to the magistrate's credibility determinations when deciding whether to overrule a party's objections to a magistrate's decision.  *Calanni* held no such thing.

{¶ 62} Indeed, in *Calanni*, the trial court noted that although "[m]uch of the case turned on the credibility of the witnesses," it went on to conduct an independent review and make credibility assessments based upon the evidence presented at trial. *Id.* at ¶ 30.  The trial court concluded that one of the plaintiff's testimony was "vague and evasive" and "contrary to his own witness."  *Id.* at ¶ 32.  The court also noted "discrepancies between [the plaintiffs'] exhibits."  *Id.*  After reviewing the plaintiffs' testimony and evidence, the court made its own determination that there was

"serious issues concerning credibility of [their] evidence." *Id.* at ¶ 35. Thus, it is my view that the trial court here improperly relied on *Calanni*.

{¶ 63} While appellate courts may sometimes defer to the trier of fact when testimony is in dispute, a trial court is not afforded the same luxury when independently reviewing a magistrate's decision. *See Knauer v. Kneener*, 143 Ohio App.3d 789, 793-794, 758 N.E.2d 1234 (2d Dist.2001) ("The trial court may not properly defer to the magistrate in the exercise of the trial court's de novo review."); *Haupt v. Haupt*, 11th Dist. Geauga No. 2015-G-0049, 2017-Ohio-2719, ¶ 26, citing *Phillips v. Phillips*, 2014-Ohio-5439, 25 N.E.3d 371, ¶ 26 (5th Dist.) ("When a trial court reviews a magistrate's decision, it "does not sit in the same manner as an appellate court; rather, it must conduct an independent review of the facts and conclusions made by the magistrate."). Therefore, when a trial court defers to a magistrate's credibility determinations, it abuses its discretion. *Lichtenstein v. Lichtenstein*, 8th Dist. Cuyahoga No. 108854, 2020-Ohio-5080, ¶ 15-17.

{¶ 64} Accordingly, I would find that the trial court abused its discretion when it overruled wife's objections because there was no competent, credible evidence in the record to support the fact that the parties *voluntarily* lived separate and apart without cohabitation for one year.

{¶ 65} Because the magistrate and trial court failed to determine whether husband was competent to testify regarding his intent to divorce wife and there was no competent credible evidence in the record to support the trial court's finding that

the parties voluntarily lived separate and apart for more than one year, I would reverse the trial court's judgment, vacate the divorce decree, and dismiss the case.